Dianne C. AMMON, a minor, By and Through her father and next friend, Edwin D. Ammon and Edwin D. Ammon, Individually, Plaintiffs,

v.

Bruce N. KAPLOW and John V. Steiner, Defendants.

Civ. A. No. 78–2262.

United States District Court, D. Kansas.

April 26, 1979.

Larry J. Austin and Thomas R. Hill, of Wallace, Saunders, Austin, Brown & Enochs, Overland Park, Kan., for plaintiffs.

Kenneth E. Holm, of Boddington & Brown, J. Nick Badgerow, of McAnany, Van Cleave & Phillips, Kansas City, Kan., for defendants.

## MEMORANDUM AND ORDER

O'CONNOR, District Judge.

This action is before the court on the separate motions of defendants Kaplow and Steiner to quash return of service of process and to dismiss. Kaplow and Steiner contend that this court lacks personal jurisdiction over them. Rule 12(b)(2), Federal Rules of Civil Procedure. Alternatively, Kaplow moves that the action be transferred to the appropriate United States judicial district in New York under 28 U.S.C. § 1404(a). Also in the alternative, Steiner asserts that the action should be dismissed because the principle of *forum non conveniens* requires that this action be brought in New York. Steiner's alternative motion will be treated as a motion to transfer under Section 1404(a) and joined with Kaplow's alternative motion. Suggestions of counsel with supporting documents and affidavits have been received and carefully considered. We are prepared to dispose of these motions.

A summary of the facts alleged by plaintiffs will be helpful. The transaction underlying this litigation is the purchase of a horse named Miss Straw Raider by the plaintiffs Dianne Ammon and her father Edwin Ammon. Plaintiffs are residents of Kansas. They learned of the horse through an advertisement in *American Quarter Horse Journal.* Plaintiffs received the journal in Kansas. Edwin Ammon's agent contacted Kaplow with an offer to buy the horse. Plaintiffs and defendant Kaplow, the seller of the horse residing in New York, had various telephone conversations regarding its sale. Edwin Ammon traveled to New York to view the horse and to negotiate a sale. Kaplow represented Miss Straw Raider as a good show horse, a good youth horse and a sound horse; these were representations that had also been made in the informational advertisement. Plaintiffs eventually contracted to buy the horse for $22,500.00 ($2,250.00 down and $20,-250.00 upon delivery). In addition to the horse and its certification papers, the consideration for the purchase price included Kaplow's promise to run a full-page three-color advertisement in *The American Quarter Horse Journal.*

At some point in the negotiations, it was determined that the horse should be examined by a veterinarian. Dr. Steiner, D.V.M., Kaplow's veterinarian, was employed by plaintiffs to perform the pre-purchase examination. Steiner signed a "Certificate of Equine Soundness Examination" on February 26, 1978. Plaintiffs' Suggestions in Opposition to Steiner's Motions, Exhibit 1. He issued the certificate to "Diane Ammon" of Kansas City, Missouri, and opined that Miss Straw Raider was sound for use as a show horse. It appears that this opinion was given in New York. Plaintiffs' agent in Kansas, Dr. Keefer, D.V.M., called Steiner and requested that certain radiographs be taken with the horse's front shoes removed. Steiner mailed the radiographs to Kansas on March 6th with a note to Keefer stating that the front shoes had not been removed at the request of the present owner (presumably Kaplow). *Id.,* Exhibit 2. Steiner then billed the plaintiffs for his services by mailing a statement into Kansas dated March 20, 1978. *Id.,* Exhibit 3. Plaintiffs paid Steiner by check on March 31, from Kansas. *Id.,* Exhibit 4.

Plaintiffs also submit an "Equine Health Certificate for Interstate Shipment" signed by Steiner. *Id.,* Exhibit 5. The certificate states the horse was examined on March 6, 1978, and was found free from visible symptoms of infectious, contagious, or communicable diseases or known exposure thereto. The certificate was issued in compliance with the entrance requirements of the state of destination. Although there was apparently a mistake in the state designated originally, the correction clearly reads "Kansas."

The Ammons further submit evidence of an insurance policy on Miss Straw Raider obtained through Kaplow, an insurance broker. Plaintiffs' Suggestions in Opposition to Kaplow's Motions, Exhibits 1 and 2. One thousand dollars of the $1,250.00 premium was paid directly to Kaplow. *Id.,* Exhibits 7, 8 and 9. Apparently Kaplow arranged for the insurance through Kaplow and Zi-

plow, Inc., his brokerage firm, and paid the additional $250.00 premium himself. The policy lists the assured as Dianne Ammon of Stanley, Kansas and became effective on March 16, 1978, the date the horse was placed in possession of plaintiffs' agents. An additional endorsement covering cosmetic surgery and costing $250.00 of the total $1,250.00 premium, became effective on March 29, 1978. By this date the horse had been transported to Kansas. The policy is countersigned by a Wichita, Kansas insurance agency.

Kaplow delivered Miss Straw Raider to plaintiffs in Columbus, Ohio on or about March 16, 1978, and the balance of the payment was made by wiring funds from Kansas to New York. Plaintiffs transported the horse to Kansas. Kaplow then mailed Miss Straw Raider's certificate of registration to plaintiffs in Kansas. Upon examination, the horse was discovered to be suffering from a severe, progressive, irreversible disease—Pedal Osteiotis. Plaintiffs believe the condition existed prior to the contract and is a breach of the contract.

Plaintiffs filed a 13-count petition in the District Court of Johnson County, Kansas. Defendants removed to federal court based upon diversity of citizenship and an amount in controversy exceeding the sum of $10,000.00. The complaint advances theories of recovery against Kaplow based upon breach of contract, breach of express warranties, breach of an implied warranty of merchantability, breach of an implied warranty of fitness for a particular purpose, breach of provisions of the Kansas Consumer Protection Act, fraud, and the negligence or willful bad acts of Kaplow's agent Steiner. The complaint advances theories of recovery against Steiner based upon negligence, aiding and abetting Kaplow in defrauding plaintiffs, conspiracy to defraud plaintiffs, breach of contract, fraud and misrepresentation, and malpractice.

In considering defendants' motions to dismiss for lack of personal jurisdiction, we must determine whether Kaplow's conduct and Steiner's conduct fall within the scope of the enumerated acts of the Kansas long-arm statute, K.S.A. 60–308. In pertinent part, the statute provides:

"(b) *Submitting to jurisdiction—process.* Any person, whether or not a citizen or resident of this state, who in person or through an agent or instrumentality does any of the acts hereinafter enumerated, thereby submits said person, and, if an individual, his or her personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of said acts:

(1) The transaction of any business within this state;

(2) The commission of a tortious act within this state;

. . . . .

(4) Contracting to insure any person, property or risk located within this state at the time of contracting;

(5) Entering into an express or implied contract, by mail or otherwise, with a resident of this state to be performed in whole or in part by either party in this state;

. . . . .

(7) Causes injury to persons or property within this state arising out of an act or omission outside of this state by the defendant, provided in addition, that at the time of the injury either (i) the defendant was engaged in solicitation or service activities within this state; or (ii) products, materials or things processed, serviced or manufactured by the defendant anywhere were used or consumed within this state in the ordinary course of trade or use . . . ."

We must also determine whether defendants' contacts with the state of Kansas are sufficient to meet the due process requirements set out in *International Shoe Company v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and recently reiterated in *Shaffer v. Heitner,* 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977) and *Kulko v. Superior Court,* 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978). Both the statutory and constitutional requirements must be met for this court to assert personal jurisdiction over defendants.

When the existence of personal jurisdiction is controverted, plaintiff has the minimal burden of establishing a *prima facie* threshold showing that constitutional and statutory requirements for the assumption of personal jurisdiction are satisfied. *Professional Investors Life Ins. Co. v. Roussel,* 445 F.Supp. 687, 691–92 (D.Kan.1978). A court may consider documentary evidence and weigh affidavits in determining whether such a showing has been made. *Purdue v. Jerry Black's British Auto Imports, Inc.,* No. 78–4201 (D.Kan., *unpublished,* October 20, 1978); 5 Wright & Miller, *Federal Practice & Procedure: Civil* § 1364. Factual doubts are to be resolved in favor of the plaintiff. *Heyen v. May,* No. 75–238–C6 (D.Kan., *unpublished,* January 29, 1976). With these guidelines in mind, we shall consider first whether Kaplow's conduct falls within the enumerated provisions of the Kansas long-arm statute.

Subsection (b)(1) provides for personal jurisdiction over those who transact "any business within this state." The Kansas Supreme Court has held that the subsection requires the defendant's physical presence within the state. *White v. Goldthwaite,* 204 Kan. 83, 460 P.2d 578 (1969); *Woodring v. Hall,* 200 Kan. 597, 438 P.2d 135 (1968). No allegation has been made that Kaplow entered the state of Kansas relative to the sale of Miss Straw Raider. The delivery by Kaplow of a different horse to the M.B.J. Quarter Horse Ranch in Wichita, Kansas, as asserted in plaintiff's affidavit of Mary Ann Parris, is irrelevant. Personal jurisdiction does not exist under subsection (b)(1).

If Kaplow has committed a tortious act within the state, the conduct falls within the scope of subsection (b)(2). In *J.E.M. Corporation v. McClellan,* 462 F.Supp. 1246 (D.Kan.1978) Judge Theis construed this subsection. Therein, the plaintiff alleged that it agreed to sell an apartment complex to defendant McClellan for $310,000.00, including a quantity of jade valued at $110,-000.00. Plaintiff placed a single phone call to defendant Vogel in Chicago in order to receive an appraisal value for the jade. Vo-gel was apparently familiar with the jade in question. Plaintiff alleged that Vogel represented over the telephone that the jade was worth as much as McClellan claimed and that its value was increasing. Upon finding the true worth of the jade to be only $15,000.00, plaintiff brought an action claiming that Vogel intentionally and fraudulently misrepresented the jade's value to mislead the plaintiff and induce the plaintiff to enter into a contract upon this mistaken belief. The issue before the court was whether a fraudulent misrepresentation made from without the jurisdiction and causing tortious injury within the jurisdiction constitutes a "tortious act within the state" under subsection (b)(2). Judge Theis determined that it does.

In the case *sub judice,* Kaplow placed the advertisement leading to the sale in the *American Quarter Horse Journal.* The journal was received by the plaintiffs in Kansas. The advertisement is alleged to misrepresent Miss Straw Raider. After phone conversations with Kaplow, Edwin Ammon traveled to New York and misrepresentations were again allegedly made by Kaplow. Only upon the examination of Miss Straw Raider in Kansas did plaintiffs discover the alleged misrepresentations. We concur with Judge Theis' opinion in *J.E.M. Corporation* that subsection (b)(2) requires no physical presence of the defendant within the state. For cases that construe similar statutes in a like manner, *see Fulton v. Chicago, Rock Island & Pacific R.R. Co.,* 481 F.2d 326 (8th Cir. 1973) *rehearing denied* June 4, 1973; *Murphy v. Erwin-Wasey, Inc.,* 460 F.2d 661 (1st Cir. 1972); *Electro-Craft Corp. v. Maxwell Electronics Corp.,* 417 F.2d 365 (8th Cir. 1969); *Southeast Guaranty Trust Co. v. Rodman & Renshaw, Inc.,* 358 F.Supp. 1001 (N.D.Ill. 1973); *Texair Flyers, Inc. v. District Court, First Judicial District,* 180 Colo. 432, 506 P.2d 367 (1973). Under the facts alleged and supported by documents and affidavits, Kaplow's conduct falls within subsection (b)(2).

Subsection (b)(4) permits jurisdiction to be asserted over defendants who contract to

insure any person, property or risk located within this state at the time of contracting. Jurisdiction under (b)(4) has not been alleged by plaintiffs although they have referred to it. Part of the premium for the insurance ($1,000 of the total $1,250) was paid directly to Kaplow. Plaintiffs' Suggestions in Opposition to Kaplow's Motions, Exhibit 7. He then apparently contracted through his insurance brokerage operation for the policy and endorsement adding an additional $250.00 to fully pay the premium. *Id.,* Exhibits 1, 2, 8 and 9. The policy became effective on March 16, 1978, the same date the horse was placed in the possession of plaintiffs' agents. *Id.* The horse was apparently in Kansas by the time the endorsement became effective on March 29, 1978. *Id.,* Exhibit 2. We have inadequate facts to determine whether subsection (b)(4) is applicable. However, subsection (b)(4) indicates an additional basis for personal jurisdiction over Kaplow may exist.

■ Plaintiffs next allege that this court has jurisdiction over Kaplow by virtue of subsection (b)(5). Defendants who enter into an express or implied contract, by mail or otherwise, with a resident of this state to be performed in whole or in part by either party in this state fall within the scope of the subsection. Plaintiffs allege several bases for finding jurisdiction under (b)(5). First, they contend the insurance contract as analyzed above falls within the subsection. Second, plaintiffs maintain that part of the sales contract required Kaplow to run a full-page three-color ad in the *American Quarter Horse Journal.* Plaintiffs' Suggestions in Opposition to Kaplow's Motions, Exhibits 5 and 6. The journal and advertisement were presumably sent into Kansas. Third, performance of plaintiffs' part of the sales contract required the wiring of funds from Kansas to New York before plaintiffs' agent could gain possession of the horse and its registration papers. Last, after the money and the horse had been exchanged Kaplow mailed the horse's certificate of registration into Kansas. Plaintiffs bring to our attention a U.C.C. security interest case stating the registration papers of a horse constitute the main

source of its value. *Lee v. Cox,* 18 U.C.C. Rep.Serv. 807 (M.D.Tenn.1976). The conduct of Kaplow in releasing the horse but not the registration papers to plaintiff until payment was received supports this statement. Affidavit of Bruce Kaplow, ¶ 8. We find Ammon's last contention particularly persuasive because it relies upon Kaplow's reaching into the state of Kansas through the mailing of a document of value. The provisions of subsection (b)(5) have been met by Kaplow's conduct.

Finally, plaintiffs assert that jurisdiction exists under the products liability subsection (b)(7). A similar contention was rejected in part in *Heyen v. May,* No. 75–238–C6 (D.Kan., *unpublished,* January 29, 1976). *Heyen* was based upon the sale of cattle in Texas that had been certified to be free from disease. The cattle were transported to Kansas. The purchasers then discovered the cattle were infected. In addressing the applicability of subsection (b)(7)(ii) to those facts, Judge Brown stated,

"It is clear from the history of the Act, and of this provision in particular, that subsection (7) initially was designed to cover 'products hazard' cases. See *Stonecipher v. Sexton,* 54 F.R.D. 435 (D.Kan. 1972); Gard, *Kansas Code of Civil Procedure Annotated* 343 (1963); Casad, *Long Arm and Convenient Forum,* 20 Kan.L. Rev. 1, 37–42 (1971). The court is of the opinion that cattle, as such, are not 'products, materials or things' which may be 'processed, serviced or manufactured' within the meaning of subsection (7)(ii)."

The analysis of subsection (b)(7)(i) is less clear. Plaintiffs contend that Kaplow solicited within Kansas both for himself and on Steiner's behalf. Plaintiffs further contend that Steiner's inspection and representation that Miss Straw Raider could enter the state of Kansas is evident from the "Equine Health Certificate for Interstate Travel." The certificate was to accompany the horse into Kansas and remained valid for thirty days from March 6, 1978. This is offered on the theory that Steiner thereby performed services within the state. We are uncon-

vinced that these contentions meet either the spirit or the letter of subsection (b)(7)(i).

Having determined that Kaplow's conduct falls within enumerated provisions of the Kansas long-arm statute, we must next determine whether Kaplow's contacts with the state of Kansas are such that the assertion of personal jurisdiction does not offend traditional notions of fair play and substantial justice. We are guided by Judge Theis' analysis of the due process issue in *J.E.M. Corporation, supra.*

"The constitutional question regarding the exercise of jurisdiction warrants only brief mention. The central concern of the jurisdictional inquiry is the relationship among the defendant, the forum and the litigation, rather than the mutually exclusive territorial sovereignty of the several states. *Shaffer v. Heitner, supra,* 97 S.Ct. at 2580. The standard for the constitutional exercise of jurisdiction is not a mechanical or quantitative one, *International Shoe, supra,* 326 U.S. at 319, 66 S.Ct. 154, but rather is one of 'fairness and substantial justice.' *Shaffer, supra* 97 S.Ct. at 2580. It relies upon the existence of 'affiliating circumstances' that creates a 'sufficient connection between the defendant and the forum State as to make it fair to require defense of the action in the forum.' *Kulko v. Superior Court,* 436 U.S. 84, 98 S.Ct. 1690, 1697, 56 L.Ed.2d 132 (1978). Inconvenience to the parties, the interest of the state in providing a forum for the action, the equality and nature of the defendant's activities, and whether these activities give rise to plaintiff's claim are relevant considerations. *Kulko, supra,* 98 S.Ct. at 1697; *International Shoe, supra,* 326 U.S. at 316–317, 319, 66 S.Ct. 154; and *Pedi Bares, Inc. v. P & C Food Markets, Inc.* [567 F.2d 933 (10th Cir. 1977)].

"This court acknowledges the general disagreement whether the minimum contacts 'fairness' test of *International Shoe* requires a physical nexus with the forum, reminiscent of old notions of territorial power, or whether the primary focus of that test is on the sole consideration of fairness. Under the latter approach, the character of defendant's activities is but one factor among many for consideration. That concern is not controlling here, for even the 'physical impact' approach to minimum contacts or fundamental fairness only requires an impact within the forum. It does not require an act committed by a defendant physically present in the forum that would beckon a revival of *Pennoyer v. Neff,* 95 U.S. (5 OHO) 714, 24 L.Ed. 565 (1877), foreclosed by *Shaffer v. Heitner, supra* [433 U.S. at 212 n. 39], 97 S.Ct. at 2585 n. 39. See Casad, *Shaffer v. Heitner: An End to Ambivalence in Jurisdiction Theory?,* 26 Kan.L.Rev. 61, 68–77 (1977).

"On the facts in the record that establish plaintiff's *prima facie* case for jurisdictional purposes, it is clear that a sufficient constitutional basis for the exercise of jurisdiction exists. The intentional tortious act here causing injury to a resident in this forum in and of itself satisfies the criteria of *International Shoe* on a claim for damages arising from that act. *Thorington v. Cash,* [494 F.2d 582, 587 (5th Cir. 1974)]."

Separate from the tortious act allegations, the following has been offered to show contacts between Kaplow and Kansas in the case at bar.

1. Kaplow's placement of the advertisement containing alleged misrepresentations in the *American Quarter Horse Journal*; the journal was mailed into Kansas.

2. Kaplow's sale of horse insurance to plaintiffs through his insurance brokerage company.

3. Kaplow's agreement to run a full-page three-color ad in the *American Quarter Horse Journal* that would again be sent into Kansas.

4. Kaplow's mailing of Miss Straw Raider's certificate of registration into Kansas.

5. Payment for the horse from Kansas.

6. Kaplow's sale of Miss Straw Raider to Kansas residents.

Clearly there is more evidence of contact with Kansas than existed in *Misco-United Supply, Inc. v. Richards of Rockford, Inc.*, 215 Kan. 849, 528 P.2d 1248 (1974) or *Heyen v. May, supra.* In addition, the allegation of an intentional tortious act injuring Kansas residents is sufficient to meet the due process requirement. *J.E.M. Corporation, supra.*

Accordingly, we conclude that this court has personal jurisdiction over Kaplow.

█ We next address Steiner's contentions that his conduct falls without the enumerated provisions of the Kansas long-arm statute. Significantly, the complaint alleges that Steiner conspired with Kaplow to defraud plaintiffs. "A conspiracy in and of itself is not actionable, but Kansas has long recognized there may be recovery against all members of the civil conspiracy by one who has suffered damages as a result of actionable conduct done by one or more of the conspirators pursuant to the conspiracy." *Int'l Union, United Auto, et al. v. Cardwell Mfg. Co.*, 416 F.Supp. 1267, 1290 (D.Kan.1976). The question before us is whether well-pleaded allegations of conspiracy will also suffice as grounds for personal jurisdiction in Kansas. This question has been considered by the court in *Professional Investors Life Ins. Co. v. Roussel, supra. Professional Investors* involved an attempt to obtain personal jurisdiction over out-of-state investors for their purported role in an allegedly fraudulent takeover of a Kansas insurance holding company. After extensive research by the parties and the court, Judge Rogers concluded "that courts faced with the allegations of a conspiracy to commit a 'business tort' which has foreseeable consequences in the forum state uphold jurisdiction unless the allegations of conspiracy are too conclusory, too unsupported to be given credence." *Id.* at 696.

In the instant case, plaintiffs alleged the following as evidence of the conspiracy between Kaplow and Steiner. (1) Steiner was employed to perform the pre-purchase examination after Kaplow told plaintiffs that Steiner was his veterinarian. (2) Steiner's finding of soundness for show purposes was

issued in conjunction with Kaplow's misrepresentations as to the health of the horse. (3) Prior relations between Kaplow and Steiner are evident in the medical history of the horse shown on the face of the "Certificate of Equine Soundness Examination" dated February 26, 1978. Steiner refers to x-rays taken of both front feet on October 25, 1976 and a negative Coggins test on February 3, 1978. (4) Prior relations between Kaplow and Steiner are evident in the medical history of the horse shown on the face of the "Equine Health Certificate for Interstate Travel" dated March 6, 1978. Steiner refers to a negative A.G.I.D. test on February 3, 1978. (5) Kaplow's affidavit states that Steiner was his veterinarian. (6) Steiner did not pull the front shoes of the horse for the radiographs as instructed by Keefer because Kaplow requested he not do so.

From these allegations of plaintiff, supported in part by documents signed by Steiner, we find sufficient evidence from which to infer a conspiracy to defraud plaintiffs for the purpose of this motion. Plaintiffs need not prove their case for the court to make a preliminary determination that personal jurisdiction exists. *Hanson v. Murphy*, 208 Kan. 297, 491 P.2d 551 (1971). The documentation provided certainly amounts to more than a bald, conclusory allegation of conspiracy.

Furthermore, Steiner's alleged acts and the alleged conspiracy to defraud have foreseeable consequences in the state of Kansas. *Professional Investors, supra,* at 696. Steiner may have been unaware that his acts in New York would have consequences in Kansas when he signed the "Certificate of Equine Soundness Examination." However, his signature on the "Equine Health Certificate for Interstate Travel" listing Kansas as the state of destination is persuasive evidence for purposes of this motion that he was aware that his acts and those of the seller were reaching into Kansas. The telephone call, and especially the mailing of the letter and radiographs to Keefer in Kansas, also would have alerted Steiner of the potential consequences of his actions and those of the seller within Kansas.

Having concluded that this court has personal jurisdiction over Kaplow and that plaintiffs have sufficiently supported their allegation of conspiracy, we conclude that this court has personal jurisdiction over Steiner. Specifically, Steiner's conduct falls within subsection (b)(2) of the Kansas long-arm statute. Additionally, Steiner's conduct falls within subsection (b)(5) without reliance on the conspiracy allegation. Steiner contracted with the Kansas residents to perform the pre-purchase examination of Miss Straw Raider. Steiner conversed on the telephone with plaintiffs' agent Keefer in Kansas concerning a request for radiographs of the horse. Part of the contract was performed in Kansas by Steiner mailing the radiographs and letter into the state. Steiner's bill for professional services was mailed into Kansas. A check in payment for the bill was issued from Kansas by plaintiffs.

Next we must examine whether Steiner's contacts with the state of Kansas complied with the due process requirements. Arguably, the requirements are met by imputing Kaplow's contacts with Kansas to Steiner through a conspiracy allegation. We need not rely solely on this theory. In addition to the contacts Steiner individually had with Kansas that are listed above, Steiner issued a "Certificate of Equine Soundness Examination" to Dianne Ammon, a Kansas resident (although the certificate states that Dianne Ammon lives in Missouri) and an "Equine Health Certificate for Interstate Shipment." The latter certificate lists Kansas as the state of destination, states that the horse complies with the entrance requirements of Kansas, and further states that a copy of the document is to travel with the horse to its destination. Steiner's contacts with Kansas are sufficient to render proper the assertion of personal jurisdiction over him.

We shall now address defendants' alternative motions to transfer this case under 28 U.S.C. § 1404(a). That subsection provides:

"§ 1404. *Change of venue*

(a) For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

The law concerning such transfers is well stated in *Foley Meats, Inc. v. Bojalad and Company*, No. 77–1334 (D.Kan., *unpublished*, February 15, 1978). Therein, Judge Theis states,

"It is hornbook law that the burden is on the moving party to establish that a suit should be transferred under Section 1404(a). *Wm. A. Smith Contracting Co. v. Travelers Indemnity Co.*, 467 F.2d 662 (10th Cir. 1972); *Texas Gulf Sulphur Co. v. Ritter*, 371 F.2d 145 (10th Cir. 1967); 1 Moore, *Federal Practice*, ¶ 0.145[5] at 1615 (2d ed. 1977). Unless the balance of the consideration is strongly in favor of the moving party, the plaintiff's choice of forum should not be disturbed. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947); *Wm. A. Smith Contracting Co. v. Travelers Indemnity Co., supra; Houston Fearless Corp. v. Teter*, 318 F.2d 822 (10th Cir. 1963); *Headrick v. Atchison T. & S.F.Ry.*, 182 F.2d 305 (10th Cir. 1950). A plaintiff's choice of forum is entitled to great weight and may not lightly be set aside. *Shutte v. Armco Steel Corp.*, 431 F.2d 22 (3rd Cir. 1970); *Lee v. Hunt*, 415 F.Supp. 245 (M.D.La.1976); *Umbriac v. American Snacks, Inc.*, 379 F.Supp. 627 (E.D.Pa. 1974); *Atlantic Richfield Co. v. Stearns-Roger, Inc.*, 379 F.Supp. 869 (E.D.Pa. 1974). Additional consideration is properly given when the plaintiff has chosen the forum in which he resides. *Bayly Mfg. Co. v. Koracorp Industries, Inc.*, 298 F.Supp. 600 (D.Colo.1969) (Doyle, J.). This court further notes that the exercise of the power to transfer under Section 1404(a) is committed to the sound discretion of the trial court after consideration of all the relevant interests. *Chicago Rock Island & Pacific R.R. v. Hugh Breeding, Inc.*, 232 F.2d 584 (10th Cir. 1956); *Wehrle v. General Motors Corp.*, 276 F.Supp. 642 (W.D.Okla.1967)."

In support of the motion, Kaplow and Steiner generally contend the court would find it difficult to apply the law of another state and to enforce obedience to orders issued to defendants in states beyond the control of the forum court. No cases are cited in support. They also suggest that the court consider the unavailability of compulsory process for attendance of unwilling witnesses, the close nexus of the facts of this case and their concomitant sources of proof with the state of New York, and the increased expense to defendants and witnesses if the case remains in Kansas. Should state law other than that of Kansas control issues in this case, we are confident that counsel will assist the court in comprehending and applying the law of the foreign state. As to the suggestion of difficulty in enforcement of orders, we trust that counsel is not implying that the court's orders would not be followed by the parties in this case. In any event, a transfer to New York would only reverse the situation as to which party would reside outside the district of the forum court, which party would have increased expenses because of travel, and which witnesses would be outside the reach of compulsory process. Defendants have not met their burden of persuading the court that this case should be transferred under Section 1404(a).

IT IS THEREFORE ORDERED that defendants' motions to dismiss for lack of personal jurisdiction and to quash return of service of process be and hereby are overruled. IT IS FURTHER ORDERED that defendants' motions to transfer pursuant to 28 U.S.C. § 1404(a) be and hereby are denied.