**BATTENFELD OF AMERICA HOLDING COMPANY, INC. and SMS Capital Corporation, Plaintiffs,**

v.

**BAIRD, KURTZ & DOBSON, Defendant and Third–Party Plaintiff,**

v.

**Friedrich Theysohn GmbH, et al., Third–Party Defendants.**

No. 97–2336–JWL.

United States District Court, D. Kansas.

Feb. 5, 1999.

Randall E. Hendricks, Phillip G. Greenfield, Scott M. Brinkman, Vivian W. McLeod, Rouse, Hendricks, German, May & Shank, Kansas City, MO, for Battenfeld of America Holding Company, Inc. SMS Capital Corporation, SMS Finance Corporation.

John R Gerstein, Ross, Dixon & Masback, Washington, DC, Timothy K. McNamara, James A. Snyder, Daniel L. McClain, L.J. Buckner, Jr., Lathrop & Gage L.C., Kansas City, MO, James A. Snyder, Lathrop & Gage L.C., Overland Park, KS, John R. Gerstein, Ross, Dixon & Masback, Washington, DC, Timothy K. McNamara, Daniel L. McClain, L.J. Buckner, Jr., Lathrop & Gage L.C., Kansas City, MO, for Baird Kurtz & Dobson.

Carol A. Beier, Foulston & Siefkin L.L.P., Wichita, KS, Cheryl Kramer, Wichita, KS, for Cheryl Kramer.

Michael T. Mills, Michael T. Mills, Chartered, McPherson, KS, for Horst Eigruber.

John J. Miller, Law Offices of John J. Miller, P.A., Overland Park, KS, for Reinhard Theysohn.

Lawrence D. Greenbaum, Douglas M. Greenwald, Paul K. Thoma, Joseph F. Reardon, McAnany, Van Cleave & Phillips, P.A., Kansas City, KS, for Ernst Krueger.

Stephen D. Root, McPherson, KS, pro se.

Randall E. Hendricks, Phillip G. Greenfield, Leigh A. Bishop, Vivian W. McLeod, Rouse, Hendricks, German, May & Shank, Kansas City, MO, for American Maplan Corporation.

Mark D. Hinderks, Daniel D. Crabtree, Stinson, Mag & Fizzell, P.C., Leawood, KS, Frederick W Chockley, Peder A Garske, Suvarna U Rajguru, Baker & Hostetler LLP, Washington, DC, for Friedrich Theysohn, VGT AG.

## MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

Defendant/third-party plaintiff Baird, Kurtz & Dobson ("BKD") brought claims against certain individuals and companies as third-party defendants. Among these claims are those against VGT AG ("VGT") for fraud, fraud by silence, negligent misrepresentation, tortious contractual interference, and indemnification. This matter is presently before the court on VGT's motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) (Doc. 143). For the reasons set forth below, VGT's motion to dismiss is denied.

## I. FACTS[1]

The dispute among the parties in this case centers around the plaintiffs' purchase of American Maplan Corporation ("AMC"), a Kansas corporation located in McPherson, Kansas. The plaintiffs allege they relied on the results of a special acquisition audit conducted by BKD in deciding to purchase AMC and in establishing the purchase price, and that BKD's audit report falsely represented AMC's financial standing. BKD claims the third-party defendants engaged in an elaborate fraudulent accounting scheme to artificially inflate the profitability and value of AMC by creating various fictitious accounts receivable and inventory on AMC's books. BKD further claims the third-party defendants deliberately conducted this scheme in a manner that would not be detected by BKD's standard auditing procedures, which are in accordance with generally accepted accounting standards.

Prior to the plaintiffs' purchase of AMC, third-party defendant Freidrich Theysohn GmbH ("FTG") was the sole shareholder of AMC. FTG was and remains wholly owned by VGT. Both FTG and VGT are German companies with their principal places of business located in Germany.

BKD alleges that VGT controls and dominates the actions of FTG such that the two companies function as a single entity. However, VGT has provided an affidavit asserting that each of its subsidiaries is managed and directed by the subsidiary's own management executives, that VGT is merely a holding company which provides primarily bookkeeping, human resources, and related services for its subsidiaries, and that VGT does not conduct the regular business activity of its subsidiaries. VGT does not own property, advertise, or maintain bank accounts in Kansas, nor has it conducted business in Kansas other than

---

1. In ascertaining the facts necessary to establish jurisdiction, allegations in the complaint are accepted as true to the extent they are uncontroverted by submitted affidavits. *See* *Wenz v. Memery Crystal,* 55 F.3d 1503, 1505 (10th Cir.1995) (quoting *Behagen v. Amateur Basketball Ass'n,* 744 F.2d 731, 733 (10th Cir.1984)).

any involvement it may have had with AMC.

According to BKD, VGT devised the fraudulent scheme to improve VGT's consolidated financial statements because VGT was experiencing financial difficulties. According to VGT, however, VGT was not experiencing financial difficulties and the scheme did not impact VGT's financial statements in Germany.

Also according to BKD, the scheme was facilitated by a number of directors and officers common to VGT, FTG, and AMC. Among these individuals is third-party defendant Reinhard Theysohn who, prior to December 31, 1994, was both the managing director of VGT and the Chairman of the Board of AMC. BKD alleges Mr. Theysohn acted as an agent of VGT when he ordered the scheme.[2] According to VGT, however, Mr. Theysohn never discussed the scheme with either Stephen Root or Horst Eigruber, the third-party defendants and AMC employees who largely carried out the scheme.

Stefan Schatz later became the managing director of VGT. Dr. Schatz also served as Chairman of the Board of AMC from February of 1995 through August of 1995. The AMC purchase became effective during this time period on July 1, 1995. According to VGT, Dr. Schatz did not discuss the scheme with Mr. Root or Mr. Eigruber. However, according to Mr. Eigruber's sworn statement, Dr. Schatz was aware that inventory manipulations had occurred at AMC and desired to fix the problem, but instead told Mr. Eigruber that he needed to sell AMC to reduce some of VGT's debt because VGT was on the verge of bankruptcy.

## II. STANDARD FOR A MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

■■■ VGT urges this court to dismiss BKD's claims against VGT for lack of personal jurisdiction. On a motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), the complaining party bears the burden of establishing that personal jurisdiction may properly be exercised over a particular nonresident. See Kuenzle v. HTM Sport–Und Freizeitgerate AG, 102 F.3d 453, 456 (10th Cir.1996). When the motion is decided on the basis of affidavits and other written materials, however, the complaining party need only make a prima facie showing that personal jurisdiction is proper. See id.

■■■ In ascertaining the facts necessary to establish jurisdiction, allegations in the complaint are accepted as true to the extent they are uncontroverted by submitted affidavits. See Pytlik v. Professional Resources, Ltd., 887 F.2d 1371, 1376 (10th Cir.1989); Behagen, 744 F.2d at 733. All factual disputes are resolved in the complaining party's favor. See Pytlik, 887 F.2d at 1376. If both parties produce supporting evidence and affidavits, "the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party[.]" Id. However, when a defendant has properly challenged personal jurisdiction, and has produced evidence in support thereof, a complaining party must come forward with competent proof of facts to support the jurisdictional allegations of its complaint. See id.; Phillips USA, Inc. v. Allflex USA, Inc., 857 F.Supp. 789, 792–93 (D.Kan.1994) (holding the plaintiffs failed to adequately rebut the defendant's detailed declaration challenging jurisdiction when the plaintiffs merely offered conclusory allegations in their complaint and briefs rather than providing additional evidence alleging specific facts).

## III. PERSONAL JURISDICTION

■■■ The court determines its jurisdiction over a nonresident by the law of the

---

2. Mr. Theysohn allegedly ordered this scheme along with another third-party defendant, Ernst Krueger, who was an agent of FTG.

forum state. *See Federated Rural Elec. Ins. Corp. v. Kootenai Elec. Coop.*, 17 F.3d 1302, 1304 (10th Cir.1994). The court first determines whether the nonresident's conduct falls within one of the provisions of the forum state's long-arm statute and, second, whether the exercise of jurisdiction comports with due process requirements. *See id.* at 1304–05. In Kansas, these inquiries produce quite similar results because the Kansas long-arm statute is liberally construed to assert personal jurisdiction over nonresidents to the full extent permitted by the due process clause. *See Taylor v. Phelan*, 912 F.2d 429, 432 n. 3 (10th Cir.1990) (citing *Volt Delta Resources, Inc. v. Devine*, 241 Kan. 775, 740 P.2d 1089, 1092 (1987)).

### A. The Kansas Long–Arm Statute

BKD argues personal jurisdiction over VGT is proper because VGT, through its agents or instrumentalities, committed tortious acts within the state of Kansas. Under the Kansas long-arm statute, a party submits to the jurisdiction of courts in this state if that party, or its agent or instrumentality, commits "a tortious act within this state[.]" Kan.Stat. Ann. § 60–308(b)(2) (1994). "[A]n injury which occurs in Kansas as a result of a tortious act outside the state amounts to a 'tortious act within the state,' thus falling within" the tortious act provision of the Kansas long-arm statute. *Phelan*, 912 F.2d at 432 (citing *Ling v. Jan's Liquors*, 237 Kan. 629, 703 P.2d 731, 734 (1985)). The party's physical presence within the state is not required. *See Ammon v. Kaplow*, 468 F.Supp. 1304, 1309 (D.Kan.1979) (holding that the New York defendants'

advertisement in a national publication which allegedly misrepresented merchandise satisfies this provision); *J.E.M. Corp. v. McClellan*, 462 F.Supp. 1246, 1248–54 (D.Kan.1978) (holding that a telephone call made by the defendant from Chicago in which he allegedly made fraudulent misrepresentations satisfies this provision).

The "agent or instrumentality" provision of the statute is read broadly to encompass nonresidents who (1) control or direct the instrumentality's acts from which the claim arises, or (2) "purposefully seek[ ] and foreseeably benefit[ ] from [an] active relationship with another entity that has transacted business in the forum that gives rise to [the] claim." *Energy Reserves Group, Inc. v. Superior Oil Co.*, 460 F.Supp. 483, 514 (D.Kan.1978) (subjecting a nonresident subsidiary corporation to the long-arm statute because it benefitted from its Kansas parent corporation's contract negotiations); *accord Triple A Partnership v. MPL Communications, Inc.*, 629 F.Supp. 1520, 1523 (D.Kan.1986) (subjecting a nonresident to the long-arm statute because of the in-state activities of independent licensees who transacted business that inured to the defendant's benefit).[3]

VGT is subject to the jurisdiction of this court under section 60–308(b)(2) of the Kansas long-arm statute. Accepting the allegations in BKD's complaint as true, Mr. Theysohn directed Mr. Root to set up various fictitious accounts receivable and otherwise falsify the books and records of AMC. This allegation is uncontroverted by the affidavit provided by VGT, in which Dr. Schatz merely asserts the nature of

---

**3.** VGT argues that *Energy Reserves* and *Triple A* should be distinguished because they considered the exercise of personal jurisdiction under different provisions of the Kansas long-arm statute, namely Kan.Stat.Ann. §§ 60–308(b)(1) and (5), rather than Kan.Stat.Ann. § 60–308(b)(2). However, "agent or instrumentality" extends to each separate provision of the Kansas long-arm statute, which reads:

> Any person ... who in person or through an *agent or instrumentality* does any of the

acts hereinafter enumerated, thereby submits ... to ... jurisdiction ...:

> (1) Transaction of any business ...;
> (2) commission of a tortious act ...;
> ...
> (5) entering into an express or implied contract....

Kan.Stat.Ann. § 60–308(b) (1994) (emphasis added).

VGT as that of a holding company. BKD nevertheless bolstered its allegations with Mr. Root's and Mr. Eigruber's sworn statements which suggest the scheme was ordered to enhance VGT's consolidated financial statements because VGT was experiencing financial difficulties.

BKD also alleges VGT committed fraud by silence because VGT knew of the scheme but nevertheless failed to alert BKD during the acquisition audit. This allegation is also uncontroverted by the affidavit provided by VGT. Yet BKD provided a sworn statement in which Mr. Eigruber asserted Dr. Schatz was aware that something was awry at AMC, but nevertheless participated in or permitted the AMC scheme to proceed in order to improve VGT's financial standing. If the scheme was in fact ordered and allowed to be carried out in this manner, the actions of Mr. Theysohn and Dr. Schatz certainly were those of VGT agents who controlled or directed the AMC scheme, and VGT purposefully sought and foreseeably benefitted from its relationship with AMC.

The fraudulent scheme and subsequent sale of AMC physically occurred in Kansas, and BKD consequently suffered damages in Kansas by being exposed to potential liability for conducting its acquisition audit of AMC. Because VGT's agents' conduct caused injury to BKD in Kansas, the tortious act occurred in Kansas within the meaning of the Kansas long-arm statute.

### B. *Due Process*

VGT argues that constitutional considerations of due process also prohibit the court from exercising personal jurisdiction in this case. The touchstone of this constitutional inquiry is whether the nonresident party purposefully established "minimum contacts" with the forum state. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); *Federated Rural*, 17 F.3d at 1305. This standard may be met in two ways:

First, a court may exercise specific jurisdiction if a defendant has purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that *arise out of or relate to* those activities. Second, a court may exercise general jurisdiction where the defendant's contacts ... are ... "continuous and systematic."

*Kuenzle*, 102 F.3d at 455–56 (citations and footnote omitted) (emphasis added). BKD does not suggest that VGT's contacts with Kansas have been continuous and systematic. Thus, the court will consider only whether the exercise of specific jurisdiction is proper.

For specific jurisdiction to lie, there must be some act by which the nonresident party "purposefully avails itself of the privilege of conducting activities in the forum state." *Burger King*, 471 U.S. at 475, 105 S.Ct. 2174 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)). That requirement ensures that parties "will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts." *Id.* The contacts with the forum state should be such that the party "should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 296, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). This jurisdiction is justified because

[a] State generally has a manifest interest in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors. Moreover, where individuals purposefully derive benefit from their interstate activities, it may well be unfair to allow them to escape having to account in other States for consequences that arise proximately from such activities; the Due Process Clause may not readily be wielded as a territorial shield to avoid interstate obligations that have been voluntarily assumed. And because modern transportation and communications have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity, it

usually will not be unfair to subject him to the burdens of litigating in another forum for disputes relating to such activity.

*Burger King*, 471 U.S. at 473–74, 105 S.Ct. 2174 (citations omitted). The parties' actual course of dealing must be evaluated to determine whether a nonresident "purposefully established minimum contacts with the forum." *Id.* at 479, 105 S.Ct. 2174. The due process requirement may be satisfied and jurisdiction constitutionally exercised over a nonresident who has no physical contacts with the forum. *See Travelers Health Ass'n v. Com. of Va. ex rel. State Corp. Com'n*, 339 U.S. 643, 646–47, 70 S.Ct. 927, 94 L.Ed. 1154 (1950).

■ As an initial matter, the court will dispense with the parties' dispute regarding whether a personal jurisdiction alter ego analysis supports jurisdiction over VGT simply because of the nature of the relationships among VGT, FTG, and AMC as parent and subsidiary companies. The existence of a relationship between a company and a nonresident affiliated company may assist the minimum contacts inquiry. *See Hoffman v. United Telecomms., Inc.*, 575 F.Supp. 1463, 1472 (D.Kan.1983). The court must search for factors that establish (1) an affiliated relationship between the corporations either by their actual relationship or the degree of control one exerts over the other, (2) direction or control from the forum, and (3) a "flow of benefits or funds to and from the forum such that the defendant may be said to have purposefully availed itself of the benefits and protections of the forum." *Id.* (relying on *Energy Reserves*, 460 F.Supp. at 507). Certainly a relationship exists among VGT, FTG, and AMC, since VGT owns one hundred percent of FTG, and FTG formerly owned one hundred percent of AMC. However, other than the dispute that is the subject of this litigation, the plaintiff has

not demonstrated that VGT exerts substantial direction and control over FTG or, formerly, AMC, beyond that normally associated with a parent-subsidiary relationship. Furthermore, other than the dispute that is the subject of this litigation, it does not appear that VGT purposefully availed itself of the benefits and protections of conducting business in Kansas. Standing alone, the nature of the relationships among these entities certainly does not support the exercise of personal jurisdiction in this case.

■ However, in the context of this particular dispute BKD has supported its prima facie case by alleging specific facts and providing sworn statements that suggest VGT purposefully availed itself of the privilege of conducting activities in Kansas, thereby invoking the benefits and protections of Kansas laws. While the quantity of the contacts between VGT and Kansas appears to have been fairly minimal, the quality and nature of these contacts is highly significant to BKD's claims. Mr. Theysohn ordered the AMC scheme—which was carried out almost entirely in Kansas—and Dr. Schatz wrongfully allowed the sale of this Kansas corporation to proceed despite his knowledge of the scheme. Both Mr. Theysohn and Dr. Schatz acted in their capacities as VGT agents because the scheme was motivated by a desire to increase the value of VGT and its subsidiaries. This act undoubtedly required a fairly powerful directive that exerted pressure upon a number of individuals to carry out the scheme and to keep it secret. Issuing such a directive commanded a substantial effort by a number of Kansas employees,[4] and is by no means a contact with the state that is random, fortuitous, or attenuated. VGT, therefore, should have anticipated being haled into court here.

---

4. According to Mr. Root's sworn statement, a number of individuals at AMC carried out the scheme including himself, his administrative assistant, another individual hired to assist him extensively in concealing the scheme from BKD, a shipping clerk, a stock room supervisor, a stock room lead man, and a stock room clerk. In addition, Mr. Eigruber admitted his involvement in the scheme.

Once the nonresident's minimum contacts have been established, "these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" *Burger King,* 471 U.S. at 476, 105 S.Ct. 2174. In other words, the exercise of jurisdiction must be reasonable. *See Rambo,* 839 F.2d at 1419 n. 6. Where a nonresident has purposefully directed its activities at the forum state's residents, it must "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King,* 471 U.S. at 477, 105 S.Ct. 2174.

VGT has not made such a case here. VGT relies on *Phillips USA, Inc. v. Allflex USA, Inc.,* 857 F.Supp. 789 (D.Kan.1994), as support for the proposition that BKD has failed to show jurisdiction is proper. *Phillips* is admittedly similar to the instant case in many respects. For example, the defendant in *Phillips* provided a detailed affidavit by an officer and director of the parent corporation which supported the contention that the parent corporation was merely a holding company. *See id.* at 792. VGT has provided a similar affidavit from Dr. Schatz. Furthermore, the defendant in *Phillips* pointed out that the parent corporation did not have an office, employees, property, or bank account, nor had it advertised in Kansas. *See id.* Similarly, VGT argues that neither it nor FTG conducts business, owns property, or maintains bank accounts in Kansas.

However, in *Phillips,* the plaintiffs failed to produce evidence to rebut the defendant's evidence supporting the jurisdictional challenge. *See id.* The court noted that the complaining party must at least "allege specific facts which could support the court's exercise of jurisdiction[.]" *Id.* In this case, BKD has alleged these specific facts and has provided Mr. Root's and Mr. Eigruber's detailed sworn statements that sufficiently rebut the defendant's arguments and support the exercise of jurisdiction in a manner much more directly than VGT's mere assertion of its status as a holding company. According to the sworn statements produced by BKD, Mr. Eigruber believed that Reinhard Theysohn issued the directive to manipulate the inventory and accounts receivable. Furthermore, Dr. Schatz told Mr. Eigruber that he was aware of the inventory manipulations and wanted to fix the problem, but did not do so because VGT was on the verge of bankruptcy and AMC would have to be sold to reduce VGT's debts. Mr. Root also stated that "[i]t was common knowledge at AMC that VGT ... [was] experiencing financial difficulties."

The exercise of jurisdiction would not offend traditional notions of fair play and substantial justice in this case. Again, although Dr. Schatz knew something was awry at AMC, he nevertheless allowed the sale of AMC to occur. VGT's consolidated financial statements purportedly reaped the benefits of Mr. Theysohn's active and Dr. Schatz's passive involvement in the AMC scheme and subsequent sale of the business. The state of Kansas has an interest in providing a forum in which those who have suffered injury from this conduct may seek relief. *See Rainbow Travel Serv., Inc. v. Hilton Hotels Corp.,* 896 F.2d 1233, 1238 (10th Cir.1990) ("It is somewhat disingenuous for the defendants to derive economic benefits from business dealings in the state ...—dealings directed at a resident of the state—while disclaiming any connection with the forum state."); *Equifax Servs., Inc. v. Hitz,* 905 F.2d 1355, 1360 (10th Cir.1990) (noting that the state of Kansas has a legitimate interest in holding a nonresident answerable on a claim related to the nonresident's contacts with the state).

In summary, the court concludes that the requirements of both the Kansas long-arm statute and due process have been satisfied here. A Kansas corporation's employees may have been directed by VGT agents to carry out an elaborate fraudulent scheme in order to realize economic gain, and these contacts with the

state were by no means accidental. Accordingly, this court has jurisdiction over VGT, and VGT's motion to dismiss on this basis is denied.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendants' motion to dismiss for lack of personal jurisdiction (Doc. 143) is denied.

**IT IS SO ORDERED.**