**B–S STEEL OF KANSAS, INC., Plaintiff,**

v.

**TEXAS INDUSTRIES, INC., Chaparral Steel Texas, Inc., Chaparral Steel Midlothian, L.P., Chaparral Steel Company, Defendants.**

No. 01–2410–JAR.

United States District Court,
D. Kansas.

Sept. 3, 2002.

1212

James R. Eiszner, Shook, Hardy & Bacon, L.L.P., Kansas City, MO, David A. Rameden, Shook, Hardy & BAcon, L.L.P., Overland Park, KS, for Plaintiff.

Susan C. Hascall, Geroge E. Leonard, Dennis D. Palmer, Shugart Thomson & Kilroy, Overland Park, KS, for Defendants.

*MEMORANDUM & ORDER GRANT-*
*ING IN PART AND DENYING IN*
*PART MOTIONS TO DISMISS;*
*GRANTING IN PART CHAPAR-*
*RAL STEEL MIDLOTHIAN'S MO-*
*TION TO STAY AND COMPEL*
*ARBITRATION; AND DENYING*
*MOTIONS FOR STAY OF TEXAS*
*INDUSTRIES, INC., CHAPARRAL*
*STEEL TEXAS AND CHAPARRAL*
*STEEL COMPANY*

ROBINSON, District Judge.

This is an action filed by Plaintiff B–S Steel of Kansas, Inc. against four companies, Texas Industries, Inc., Chaparral Steel Texas, Inc., Chaparral Steel Midlothian, L.P., and Chaparral Steel Company, with federal claims of price discrimination under § 2 of the Clayton Act and § 2 of the Sherman Act (15 U.S.C. § 2), and state law claims of fraud, misrepresentation and interference with prospective business relations. Plaintiff alleges that its damages exceed four million dollars, from lost bids, contracts and customers, caused by Defendants' "secret deal" to sell wide flange steel at a lower price to a group of favored buyers who are Plaintiff's competitors.

The Court has federal question jurisdiction of the antitrust claims, pursuant to 28 U.S.C. §§ 1331 and 1337, and diversity jurisdiction of the state law claims, which exceed $75,000 in amount and which involve a plaintiff with Kansas citizenship and four defendants, who are Delaware corporations with principal places of business and/or executive offices in Texas.

**Relief Sought by Defendants**

Defendants Texas Industries, Inc. (TXI), Chaparral Steel Texas, Inc. (Chaparral Texas) and Chaparral Steel Company (Chaparral Steel) move to dismiss this action for lack of personal jurisdiction over them, contending they have no contacts specifically or generally with businesses or residents in Kansas. Defendant Chaparral Steel Midlothian, L.P. (Chaparral Midlot-

hian) does not contest the Court's personal jurisdiction, but moves to stay this action pending arbitration of Plaintiff's claims, in accordance with an arbitration clause in its contract with Plaintiff. Chaparral Midlothian further moves to dismiss any claims not arbitrable, because in a forum selection clause in the contract, the parties agreed to litigate in Texas. The other defendants, TXI, Chaparral Texas and Chaparral Steel, although not parties to the contract, also rely on the arbitration and forum selection clauses, and move for a stay of arbitrable claims and dismissal of all other claims.

**Relief to be Given to Defendants**

Because the Court concludes that the 1997 contract between Plaintiff and Chaparral Midlothian is valid and enforceable, and that its arbitration clause applies to Plaintiff's antitrust and tort claims in this action, the Court grants Chaparral Midlothian's motion to stay and refer to arbitration claims with respect to transactions occurring before April 3, 2001. Effective April 3, 2001, Plaintiff and Chaparral Midlothian entered into another contract, which did not have an arbitration clause. The Court grants Chaparral Midlothian's motion to dismiss these nonarbitrable claims, for transactions occurring after April 3, 2001, because of the forum selection clause in the 2001 contract. The Court denies TXI, Chaparral Steel and Chaparral Texas's ("the three defendants") motions to dismiss for lack of personal jurisdiction, because they are so interrelated operationally and functionally with Chaparral Midlothian, that the contacts of Chaparral Midlothian with Plaintiff in this forum are reasonably attributable to them. The Court further denies the three defendants' motions to dismiss for improper venue, because the forum selection clause does not apply. Finally, the Court denies the three defendants' motions to stay proceedings.

## I. Motions to Dismiss No Personal Jurisdiction

The three defendants (TXI, Chaparral Steel and Chaparral Texas) move to dismiss this action for lack of personal jurisdiction.[1]

### A. Federal Question Claims

Plaintiff brings federal claims of price discrimination under § 2 of Clayton Act[2] and § 2 of the Sherman Act.[3] The three defendants who challenge personal jurisdiction are Delaware corporations, with principal places of business in Texas. The three defendants are subject to statutory nationwide service of process of these antitrust claims, by virtue of 15 U.S.C. § 22, which states,

> Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found.[4]

■ A number of courts have concluded that a federal statute allowing nationwide service of process gives a Court in personam jurisdiction over a nonresident defendant as long as it has "national contacts," if not minimum contacts within the forum state.[5] But, the Tenth Circuit rejected the "national contacts" test in *Peay v. BellSouth Medical Assistance Plan,*[6] as not fully satisfying the due process restrictions on personal jurisdiction.[7] Rather, the court must invoke a two step analysis: (1) "whether the applicable statute potentially confers jurisdiction" by authorizing service of process on the defendant; and (2) "whether the exercise of jurisdiction comports with due process."[8] And, "service of process and personal jurisdiction both must be satisfied before a suit can proceed, [because] they are distinct concepts that require separate inquiries."[9]

■ In a federal question case, personal jurisdiction flows from and is limited by the Due Process Clause of the Fifth Amendment.[10] Noting that the Supreme Court has not yet defined the Fifth

---

1. Fed.R.Civ.P. 12(b)(2).

2. As amended by the Robinson–Patman Act, 15 U.S.C. § 13.

3. 15 U.S.C. § 2.

4. 15 U.S.C. § 22.

5. *Federal Fountain, Inc. v. KR Entertainment, Inc. (In re Federal Fountain, Inc.),* 165 F.3d 600, 601–02 (8th Cir.1999) (en banc) (bankruptcy); *Bellaire Gen. Hosp. v. Blue Cross Blue Shield,* 97 F.3d 822, 825–26 (5th Cir. 1996) (reluctantly following precedent to apply the national contacts test in an ERISA case, with criticism of the national contacts test's failure to separate personal jurisdiction from due process analysis).

6. 205 F.3d 1206, 1209—1214 (10th Cir.2000) (ERISA case).

7. The Tenth Circuit distinguished its decision in *Application to Enforce Admin. Subpoenas Duces Tecum of the SEC v. Knowles,* 87 F.3d 413 (10th Cir.1996), as one limited to "the narrow proposition that under the facts and circumstances presented in that case, [15 U.S.C.] § 77v(a) authorized the district court to exercise and enforce its subpoena power worldwide." *Id.* at 1211, n. 4.

8. *Peay,* 205 F.3d at 1209 (citing *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.,* 119 F.3d 935, 942 (11th Cir.1997), and *Omni Capital Int'l v. Rudolf Wolff & Co.,* 484 U.S. 97, 104, 108 S.Ct. 404, 98 L.Ed.2d 415 (1987) (finding, in a federal question case, that before a federal court may exercise personal jurisdiction over a defendant, there must be "a basis for the defendant's amenability to service of summons")).

9. *Peay,* 205 F.3d at 1209 (citation omitted).

10. *Id.* at 1210 (citing *Omni Capital Int'l,* 484 U.S. at 103–104, 108 S.Ct. 404, 98 L.Ed.2d 415 (1987)).

Amendment's due process limitations on personal jurisdiction, in *Peay,* the Tenth Circuit likened the parameters to those of the Fourteenth Amendment's Due Process Clause in some respects, that is "protecting an individual's liberty interest in avoiding the burdens of litigating in an unfair or unreasonable forum;"[11] and the *International Shoe* doctrine of not offending "traditional notions of fair play and substantial justice."[12] Thus, the Tenth Circuit held that

> in a federal question case where jurisdiction is invoked based on nationwide service of process, the Fifth Amendment requires the plaintiff's choice of forum to be fair and reasonable to the defendant. In other words, the Fifth Amendment "protects individual litigants against the burdens of litigation in an unduly inconvenient forum."[13]

Yet, the Tenth Circuit modified the traditional "minimum contacts" analysis of the Fourteenth Amendment in several respects. First, the court shifted the burden from the plaintiff, who typically has the burden of making a prima facie showing that personal jurisdiction is proper.[14] Instead, the Tenth Circuit placed the burden on the defendant to show, in the first instance, "that his liberty interests actually have been infringed."[15] The defendant must further show that subjecting him to in personam jurisdiction in the forum will "make litigation so gravely difficult and inconvenient that [he] unfairly is at a severe disadvantage in comparison to his opponent."[16] In fact, the Tenth Circuit noted that "it is only in highly unusual cases that inconvenience [to Defendants of litigating in the forum] will rise to a level of constitutional concern."[17]

■ Factors the court should consider in evaluating whether the defendant has met this burden of showing "constitutionally significant inconvenience,"[18] include:

> (1) the extent of the defendant's contacts with the place where the action was filed; (2) the inconvenience to the defendant of having to defend in a jurisdiction other than that of his residence or place of business, including (a) the nature and extent and interstate character of the defendant's business, (b) the defendant's access to counsel, and (c) the distance from the defendant to the place where the action was brought; (3) judicial economy; (4) the probable situs of the discovery proceedings and the extent to which the discovery proceedings will take place outside the state of the defendant's residence or place of business; and (5) the nature of the regulated activity in question and the extent of impact that the defendant's activities have beyond the borders of his state of residence or business.[19]

■ The three defendants have not specifically addressed how their liberty inter-

---

11. *Id.* at 1211 (citation omitted).

12. *Id.* (quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)).

13. *Id.* at 1212 (quotation and citation omitted).

14. *See Kuenzle v. HTM Sport–Und Freizeitgerate AG,* 102 F.3d 453, 456 (10th Cir.1996) (citation omitted); *Battenfeld of America Holding Co., Inc. v. Baird, Kurtz & Dobson,* 45 F.Supp.2d 1109, 1113 (D.Kan.1999).

15. *Peay,* 205 F.3d at 1212 (quoting *Republic of Panama,* 119 F.3d at 946).

16. *Id.* (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 478, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)).

17. *Id.* at 1212–13 (quoting *Republic of Panama,* 119 F.3d at 947).

18. *Id.* at 1212 (quoting language in *Republic of Panama,* 119 F.3d at 946).

19. *Id.* (citing *Oxford First Corp. v. PNC Liquidating Corp.,* 372 F.Supp. 191, 203 (E.D.Pa. 1974)).

ests are infringed by being subjected to suit in this forum. Chaparral Texas does not explain, nor support its motion to dismiss, but "reserves the right" to fully brief the issue of personal jurisdiction after the Court rules on the defendants' motions to stay proceedings and refer to arbitration. The Court did not ask nor expect the parties to reserve briefing on this threshold, jurisdictional issue.

TXI and Chaparral Steel deny having any contacts with Plaintiff or any contact with others in this forum. TXI and Chaparral Steel contend that they are not operating companies; but mere holding companies who own stock and intellectual property in other business entities. They further contend that they are entities separate and distinct from Chaparral Midlothian, such that its contacts with Plaintiff should not be attributed to them.

Plaintiff counters that TXI and Chaparral Steel are more than "paper tigers." In its shareholder literature, TXI characterizes itself as the second largest domestic steel producer, who "directs and controls a huge empire that produces and sells both concrete and steel worldwide." TXI is a publicly traded company with more than $1.25 billion in sales in the year 2000; and its wholly owned subsidiary, Chaparral Steel, sold more than $574 million of steel in the year 2000, according to this same literature. Neither TXI nor Chaparral Steel have refuted these allegations. And, as more fully addressed below in the section on state law claims, Chaparral Midlothian has significant contacts with Plaintiff and Chaparral Midlothian's contacts are reasonably attributable to the other three defendants. Neither TXI nor Chaparral Steel have addressed the degree of inconvenience they would be caused by defending this action in this forum. The fact that Plaintiff has shown that these are compa-

nies who represent themselves to be operating companies, or part of a conglomerate of operating companies; and the fact that these companies operate throughout the United States, leads the Court to conclude that any inconvenience caused them by litigating in this forum is minimal. With interstate sales and business transactions in many states, these large corporations have the resources and experience to retain counsel in forums other than Delaware or Texas. Furthermore, the fact that this action is based on alleged antitrust violations, involving transactions with multiple buyers in multiple places, suggests that discovery will occur in multiple places, and there will be witnesses and documents located in multiple jurisdictions. Any inconvenience caused by litigating in this forum, would not be alleviated by transferring this case to another forum. The very nature of the federal question claims in this action suggests an action involving a number of transactions in many locations; and if the claims are true, antitrust violations by the second largest domestic producer of steel would have far and wide ranging impact.

Like the Tenth Circuit in *Peay*, in light of the three defendants' failure to show constitutionally significant inconvenience, this Court declines to address the second prong of the Tenth Circuit's analysis,[20] the balancing test, which weighs the federal interest in litigating the dispute in the chosen forum against the burden imposed on the defendant.

### B. State Law Claims

 Plaintiff brings state law claims for fraud, misrepresentation and interference with prospective business relations. Jurisdiction over a nonresident defendant in a suit based on diversity is determined by the law of the forum state.[21] Thus the

---

**20.** *Id.* at 1213 (quoting *Republic of Panama,* 119 F.3d at 948).

**21.** *Wenz v. Memery Crystal,* 55 F.3d 1503, 1506 (10th Cir.1995).

Court begins its analysis with the Kansas Long Arm Statute,[22] the vehicle by which Plaintiff claims that the Court has personal jurisdiction. That statute states in pertinent part:

> Any person ... who in person or through an agent or instrumentality does any of the acts hereinafter enumerated, thereby submits the person ... to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of these acts:
>
> (1) Transaction of any business within this state;
>
> (2) commission of a tortious act within this state;
>
> . . . .
>
> (5) entering into an express or implied contract, by mail or otherwise, with a resident of this state to be performed in whole or in part by either party in this state.
>
> . . . .

■ The Court clearly has personal jurisdiction of Chaparral Midlothian, which sold and delivered steel to Plaintiff in Kansas on multiple occasions, and whose sales were procured or facilitated by sales representatives who visited Plaintiff in Kansas on multiple occasions. Chaparral Texas does not deign to express the basis for its motion to dismiss the state law claims. TXI and Chaparral Steel argue that they have no contacts with Plaintiff or anyone else in Kansas, much less minimum contacts as due process requires. But Plaintiff argues that the contacts of Chaparral Midlothian should be attributed to the other Defendants, and that exercising personal jurisdiction over the other Defendants would be reasonable under these circumstances.

■ With respect to the motions to dismiss the state law claims, Plaintiff bears the burden of establishing personal jurisdiction over the Defendants,[23] to show that jurisdiction is proper under the laws of the forum state, and that the exercise of jurisdiction would not offend due process.[24] This is a light burden.[25] Plaintiff need only make a primà facie showing, relying on uncontroverted "well pled facts" of the complaint.[26] In *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*,[27] the Tenth Circuit noted that because the Kansas Long Arm Statute is liberally construed by Kansas courts, jurisdiction is generally considered proper under Kansas law and courts proceed directly to the due process analysis.

■ The Due Process Clause of the Fourteenth Amendment allows the exercise of personal jurisdiction over a nonresident defendant, so long as there are "minimum contacts" between the defendant and the forum state.[28] The minimum contacts standard may be met in one of two ways:

---

**22.** K.S.A. 60–308.

**23.** *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir.1998) (citing *Rambo v. American Southern Ins. Co.*, 839 F.2d 1415, 1417 (10th Cir.1988)).

**24.** *Intercon, Inc. v. Bell Atlantic Internet Solutions, Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000) (citation omitted).

**25.** *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir.1995) (citation omitted).

**26.** *Federal Deposit Ins. Corp. v. Oaklawn Apartments*, 959 F.2d 170, 174 (10th Cir. 1992); *Ten Mile Indus. Park v. Western Plains Serv. Corp.*, 810 F.2d 1518, 1524 (10th Cir. 1987).

**27.** *OMI Holdings, Inc.*, 149 F.3d at 1090 (citing *Federated Rural Elec. Ins. Corp. v. Kootenai Elec. Coop.*, 17 F.3d 1302, 1305 (10th Cir.1994)).

**28.** *Intercon*, 205 F.3d at 1247 (citing *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)).

specific jurisdiction or general personal jurisdiction.[29] Specific jurisdiction exists if the nonresident defendant has " 'purposefully directed' his activities at residents of the forum and the litigation results from alleged injuries that 'arise out of or relate to' those activities." [30] Both the quantity and quality of the defendant's contacts with the forum are considered. Specific jurisdiction exists when the defendant has intentionally sought to do business in the foreign jurisdiction,[31] and the injuries arise from the defendant's forum related activities.[32] The Court clearly has specific personal jurisdiction over Chaparral Midlothian, who has intentionally sold steel to Plaintiff in Kansas; and Plaintiff's state law claims arise from Plaintiff's business relationship with Chaparral Midlothian.

Once the court determines that the minimum contacts necessary to show specific jurisdiction exist, that does not end the court's due process analysis. The court must further determine whether exercising jurisdiction over the defendant would be reasonable. In *OMI Holdings,* the Tenth Circuit delineated the factors for considering the reasonableness of jurisdiction: the burden on the defendant; the forum state's interest in resolving the dispute; the plaintiff's interest in receiving convenient and effective relief; the inter-

state judicial system's interest in obtaining the most efficient resolution of controversies; and, the shared interest of the several states in furthering fundamental substantive social policies.[33] The court in *OMI Holdings* further noted that the burden on the defendant is of primary concern, though not determinative of the issue of reasonableness.[34]

In this case, Plaintiff has shown that Chaparral Midlothian has had multiple contacts with Plaintiff in Kansas: sales, deliveries and visits from sales representatives. Furthermore, Plaintiff's tort claims are the type of dispute that Kansas is interested in, when a Kansas company is the putative victim. In addition, given the interstate character of Chaparral Midlothian's business, it is not unduly burdened by appearing in this forum. Plaintiff has made a sufficient showing of Chaparral Midlothian's minimum contacts and that exercising jurisdiction over it would be reasonable.

Plaintiff further argues that the minimum contacts of Chaparral Midlothian should be attributed to the other three defendants for purposes of invoking personal jurisdiction. The Court may consider the activities of an affiliated corporation "notwithstanding any lawful and viable separation of corporate identities maintained between the defendants." [35]

---

29. *SF Hotel Co., L.P. v. Energy Investments, Inc.,* 985 F.Supp. 1032, 1033 (D.Kan.1997) (citing *Trierweiler v. Croxton and Trench Holding Corp.,* 90 F.3d 1523, 1532–33 (10th Cir. 1996) (stating that general personal jurisdiction exists when the defendant's contacts with the forum state are "so continuous and systematic that the state may exercise personal jurisdiction even when the claims are unrelated to the defendant's contacts with the forum state")); *Soma Medical Intern. v. Standard Chartered Bank,* 196 F.3d 1292, 1295 (10th Cir.1999) (citation omitted) (stating that for general jurisdiction to exist, the defendant must be conducting "substantial and continuous local activity in the forum state").

30. *Soma Medical Intern.,* 196 F.3d at 1298 (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)).

31. *Burger King Corp. v. Rudzewicz,* 471 U.S. at 475, 105 S.Ct. 2174.

32. *OMI Holdings,* 149 F.3d at 1091.

33. *Id.* at 1095–96 (citation omitted).

34. *Id.* at 1096.

35. *Energy Reserves Group, Inc. v. Superior Oil Company,* 460 F.Supp. 483, 490 (D.Kan. 1978).

In fact, "formal separation of corporate identities [does] not create a constitutional barrier to exercising personal jurisdiction over a non-resident corporation whose affiliated corporation ha[s] a substantial nexus with the forum."[36] And, even if a subsidiary is not undercapitalized, or even where the companies did not fail to meet formal legal requirements of separate entities, a subsidiary's contacts with the forum may be attributed to the parent for purposes of personal jurisdiction.[37]

In their respective motions to dismiss, TXI and Chaparral Steel offered affidavits of several persons, who collectively allege that TXI and Chaparral Steel: are not operating companies; are merely holding companies that hold intellectual property and stock in various other business entities; do not make any products; do not sell and have not sold any products in the last five years; conduct no business in the State of Kansas and have not for the last five years; have not had business dealings with Plaintiff in any state, including Kansas, for the past five years; have not and are not registered to do business in Kansas; have not consented to be sued in Kansas; have no employees (TXI has no employees other than one corporate officer); and have no assets and no office in Kansas.

The Kansas Long Arm Statute[38] authorizes service "on a non-resident that has controlled or directed those acts of the instrumentality that give rise to plaintiffs' claim" or that has "purposefully [sought] and foreseeably benefit[ted] from its active relationship with another entity that has transacted business in the forum [giving] rise to plaintiffs' claims."[39]

If the Defendants are the alter ego of Chaparral Midlothian, then its contacts would be attributable to them, for purposes of personal jurisdiction.[40] But, it is not necessary that the three defendants be alter egos of Chaparral Midlothian, for "[t]he statutory language 'agent or instrumentality' extends service beyond non-resident corporations who act merely as 'alter egos' of an affiliated corporation in the forum and thus permits service on the nonresident corporation without a determination whether the corporate veil might be pierced."[41]

Plaintiff posits that the Court has personal jurisdiction over a parent company with control over a subsidiary with Kansas contacts. While a normal parent-subsidiary relationship will not result in a subsidiary's contacts being attributed to the parent, when the parent exercises substantial control and direction of the subsidiary, attribution of the subsidiary's contacts is appropriate.[42] It is plaintiff's burden to prove this control and direction.[43] Plaintiff further plead that

**36.** *Hoffman v. United Telecommunications, Inc.,* 575 F.Supp. 1463, 1470 (D.Kan.1983).

**37.** *Grimandi v. Beech Aircraft Corp.,* 512 F.Supp. 764, 771 (D.Kan.1981).

**38.** K.S.A. 60–308(b).

**39.** *Energy Reserves Group,* 460 F.Supp. at 513.

**40.** *See Quarles v. Fuqua Indus., Inc.,* 504 F.2d 1358, 1362 (10th Cir.1974).

**41.** *Energy Reserves Group,* 460 F.Supp. at 490.

**42.** *See Battenfeld of America Holding Co. v. Baird, Kurtz & Dobson,* 45 F.Supp.2d 1109, 1117 (D.Kan.1999) (holding the controversy regarding extent to which alleged "mere holding company" controlled its subsidiary and used it as an agent or instrumentality of its illegal scheme was sufficient to confer personal jurisdiction over that holding company based on its subsidiary's contacts with Kansas); *Frito–Lay, Inc. v. Procter & Gamble Co.,* 364 F.Supp. 243 (D.Tex.1973).

**43.** *Cotracom Commodity Trading AG v. Seaboard Corp.,* 94 F.Supp.2d 1189, 1192 (D.Kan. 2000).

TXI, through its 100% ownership of Chaparral Steel and its common management of the three entities known as TXI Chaparral Steel, "... dominates and controls TXI Chaparral Steel's strategies and operations, including its pricing policies." The Defendants' affidavits and submissions do not controvert Plaintiff's submissions directly or indirectly. Nor do the Defendants controvert Plaintiff's assertion that TXI and Chaparral Steel actively participate in the pricing decisions for the manufactured steel. In fact, on TXI's internet web site, Chaparral Steel states that it is "introducing a new pricing strategy that is determined using market forces, and availability." Thus Plaintiff's allegations of control must be accepted as true for purposes of establishing personal jurisdiction.[44]

 Alternatively, if the subsidiary is merely the agent of the parent, without any semblance of its own identity, then attribution is proper. When there is a close relationship between a parent and its subsidiary, that relationship may justify a finding that the parent is doing business in the jurisdiction through the activities of its agent, subsidiary.[45]

In *Energy Reserves*,[46] this Court noted that the activities and contacts of an affiliate may constitute the nonresident corporation's contacts with the forum, where the contact or activities of the affiliated corporation are intended to bestow a benefit upon the nonresident corporation that the non-resident corporation has purposefully sought or might reasonably foresee. Furthermore, considering the contacts of its affiliate is "relevant to any realistic judgment of the relative fairness of requiring

[the Defendants] to defend [themselves] in this forum on the contracts in question."[47] In determining whether to attribute an affiliate's contacts, the Court may consider, along with other factors: the flow of benefits from the affiliate's in-state activities to the Defendants; whether the activities of the affiliate are considered those of the Defendant by both the Defendant and the public; significant overlap of directors between the Defendants and the affiliate; and reporting of profits and losses of the affiliate not separately, but as a category of the Defendants' profits and losses.[48]

Plaintiff, by affidavit and numerous documents of the parties, has shown that several of these factors exist. First, the monetary benefits of Chaparral Midlothian's transactions with Plaintiff flow to the other three defendants. Plaintiff sends its purchase orders to "Chaparral Steel," receives invoices from "Chaparral Steel," and remits checks payable to "Chaparral Steel Company," who cashes them. These orders and invoices reflect an address for "Chaparral Steel" of "300 Ward Road, Midlothian, Texas." Within the past three years Plaintiff has purchased millions of dollars of wide flange steel reflected on invoices from "TXI Chaparral Steel," at a post office box in Dallas, Texas.

Secondly, TXI and Chaparral Steel hold themselves out as having control over others, and have projected the Defendants as a single unified company. Defendants do not refute Plaintiff's assertion that Chaparral Steel, Chaparral Texas and Chaparral Midlothian all refer to themselves, collectively and individually as TXI Chaparral Steel, or simply Chaparral Steel. A number of documents show that these Defen-

---

**44.** *Battenfeld of America Holding Co. v. Baird, Kurtz & Dobson,* 45 F.Supp.2d at 1113.

**45.** *Hargrave v. Fibreboard Corp.,* 710 F.2d 1154 (5th Cir.1983).

**46.** *Energy Reserves Group,* 460 F.Supp. at 490.

**47.** *Id.*

**48.** *See Hoffman v. United Telecommunications, Inc.,* 575 F.Supp. 1463, 1472–75 (D.Kan.1983); *Grimandi v. Beech Aircraft Corp.,* 512 F.Supp. 764, 770–71 (D.Kan.1981).

dants have repeatedly been represented to be affiliated companies under the umbrella of TXI. These documents include: January 29, 2001 correspondence and a revised price list from "TXI Chaparral Steel" concerning a price decrease; Plaintiff's purchase order dated January 10, 2001 addressed to "Chaparral Steel" at 300 Ward Road in Midlothian, Texas; invoices from "TXI Chaparral Steel"; an April 3, 2001 letter from Rudy Urban, Credit Manager of Chaparral Midlothian, to Plaintiff, stating "[e]nclosed herein please find the revised 'Conditions of Sale,' dated 3/27/01, which have been adopted by TXI Chaparral Steel"; and Plaintiff's check dated April 26, 2001, made payable to Chaparral Steel Co. in Dallas, Texas.

According to Plaintiff's purchasing manager, Keith Padgett, after TXI "bought out" Chaparral Steel, the sales representatives of Chaparral Steel began referring to themselves as representatives of "TXI Chaparral Steel," or "Chaparral Steel Company," or simply "Chaparral Steel." Most of the sales representatives' business cards bear the logo "TXI," a business address of 300 Ward Road in Midlothian, as well as a website address of www.chaparralsteel.com and email addresses to domains for either "chaparralsteel.com" or "txi.com."

In addition, Chaparral Steel, Chaparral Texas and TXI share a common address for executive offices, 1341 Mockingbird Lane, Suite 8, in Dallas, Texas, according to their 2001 10K or franchise tax reports. In correspondence, TXI Chaparral Steel has invited Plaintiff to utilize the millnet website or millnet@chaparralsteel.com. In fact, Plaintiff opened an Internet account with TXI Chaparral Steel and used the millnet website to conduct business with Defendants.

Moreover, in pleadings filed in other administrative or court actions, the Defendants have represented themselves as a unified company. In a 1999 petition filed with the ITC, "TXI–Chaparral Steel Company," of 300 Ward Rd., in Midlothian, Texas, characterized itself as a steel manufacturer suffering harm from unlawful dumping committed·by foreign steel producers. In a court action currently pending in Texas, Chaparral Steel is the sole plaintiff in a suit against a number of suppliers from whom Chaparral Steel bought graphite electrodes, which it used to generate heat to produce steel. And, TXI and Chaparral Steel Company, Inc. are both named defendants in a securities lawsuit pending in a Delaware Court of Chancery. That court, in ruling on the defendants' motion for summary judgment, found that Chaparral Steel produces steel products; and TXI produces steel, cement, aggregate and concrete products. In its May 31, 2001 10–K filing with the Securities and Exchange Commission, TXI states that it is "a leading supplier of construction materials through two business segments; through its steel segment, TXI produces and sells structural steel; and the company's steel products are marketed throughout the United States."

Thirdly, there is an overlap of officers and directors of the Defendants. Tommy Valenta is president and a director of Chaparral Steel, president and director of Chaparral Texas (which is the general partner of Chaparral Midlothian), and an executive vice president and chief operating officer-steel at TXI. Robert Moore is a vice president, secretary and director of Chaparral Steel; vice president, secretary and director of Chaparral Texas; and the secretary of TXI. Richard Fowler is a vice president and director of Chaparral Steel, vice president and director of Chaparral Texas, and an executive vice president of TXI. TXI and Chaparral Steel share various websites: www.chaparralsteel.com, www.millnet.com, and www.txi.com, which list a common address, and common administrative and technical contact persons.

Fourth, the profits and losses of the Defendants are not reported separately. TXI's May 31, 2001 10–K filing includes a consolidated financial statement of TXI and its subsidiaries. Also, in this filing, TXI's management reports gross profits and total sales for the steel segment as a subcategory of its total profits and sales.

Finally, contrary to TXI's assertions that it is merely a holding company, TXI's website includes a complete steel product list, and information on open steel orders and TXI steel production dates. The website links to a TXI employment home page, where job openings with TXI are listed, including production jobs at its Midlothian, Texas location. TXI calls itself "an equal opportunity employer" and claims to have 1500 employees in steel operations, out of a total of 4400 employees. According to a 1998 IRS Form 5500, TXI was the plan sponsor and administrator for an ERISA retirement plan that had nearly $56 million in assets and 2365 participants. In addition, TXI is listed as the owner of a workmen's compensation insurance policy on the Texas Workers Compensation Commission website. Furthermore, contrary to its assertions in this case, TXI owns property. The Dallas Central Appraisal District lists TXI as the owner of about $6 million in personal business property at eight locations. And, contrary to Chaparral Steel's assertions that it is not an operating company, it has more than 1300 employees according to a Dun and Bradstreet report; and, an IRS Form 5500 for 1998 revealed that Chaparral Steel Company, Inc. is the plan sponsor and administrator for an ERISA retirement plan that had nearly $38 million in assets and 1188 participants.

All of this adds up to a strong, unrefuted showing by Plaintiff that the Defendants are more than holding companies, but are interrelated entities who represented themselves to Plaintiff and the public as one company with several operating units. Thus, the Court concludes that Plaintiff has made a prima facie showing of minimum contacts supporting personal jurisdiction, through attribution of Chaparral Midlothian's contacts. Of course, the Court must still determine whether submitting these Defendants to litigation in this forum offends traditional notions of fair play and substantial justice. For the same reasons set out in the analysis of personal jurisdiction of the federal question claims, the Court concludes that invoking personal jurisdiction over the Defendants fully comports with the due process requirements of the Fourteenth Amendment.

There is still another reason why the Court is denying the motion to dismiss filed by defendant Chaparral Texas. It has wholly failed its burden of showing that its liberty interests have been infringed, opting instead to "reserve its right" to address personal jurisdiction after the Court rules on the motions to stay. The Court did not grant Chaparral Texas the right to reserve response on the threshold issue of personal jurisdiction, and thus denies its motion to dismiss for lack of personal jurisdiction for failure to prosecute the motion.

## II. Motions to Dismiss— Improper Venue

 Plaintiff has chosen this forum; and as the Tenth Circuit in *Scheidt v. Klein* has aptly noted, the plaintiff's choice of forum should rarely be disturbed.[49] The three defendants, TXI, Chaparral Steel and Chaparral Texas, move to dismiss under Rule 12(b)(3)[50] for improper

---

**49.** *Scheidt v. Klein,* 956 F.2d 963, 965 (10th Cir.1992).

**50.** Fed.R.Civ.P. 12(b)(3).

venue, based on their lack of contacts with this forum. When a defendant challenges venue, the plaintiff must establish that venue is proper in the forum state.[51] The plaintiff's burden is to show "that venue is proper as to each claim."[52] Because improper venue is a defense personal to each defendant, a defendant "may not challenge venue on the ground that it is improper as to a co-defendant."[53]

Since personal jurisdiction is proper, venue here is also proper, because under 28 U.S.C. § 1391(b) & (c), venue is proper wherever these Defendants are subject to personal jurisdiction at the time this suit is commenced. For the reasons set out above, the Court has personal jurisdiction over the three defendants, and thus venue is proper. Furthermore, under the special venue provision of 15 U.S.C. § 22, the sales of steel to Plaintiff in Kansas are the transaction of business supporting venue here.[54]

Moreover, 28 U.S.C. § 1391(b)(2) provides that venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." This provision is interpreted to allow that " '[a] substantial part of the events' may have occurred in more than one district, and venue may be proper even if contacts with another district were more substantial."[55] Venue is thus appropriate in any forum in which a substantial part of the events giving rise to the claim occurred.[56] Thus, in *Wempe v. Sunrise Medical HHG, Inc.*,[57] the court found that venue was proper in Kansas, "even though the defendant's activities in Texas may have been more substantial."[58]

■ Because Plaintiff ordered, paid for and received steel delivered in Kansas, all of the transactions occurred, at least in part, in this state. The alleged tortious conduct, which is based on fraudulent representations communicated to Plaintiff in Kansas, is conduct that therefore occurred substantially in this state. And although the conduct underlying the antitrust and tort claims may have occurred in many other states, the situs of Defendants' transactions with other buyers of wide flange steel, nevertheless, vis-a-vis the pricing of product sold to Plaintiff, there were substantial contacts in this state. Thus, venue is proper.

Furthermore, defendant Chaparral Midlothian also moves to dismiss for improper venue any claims that are not arbitrable under the 1997 contract. As discussed further in Section IV of this Memorandum and Order, those claims are covered by a

51. *M.K.C. Equipment Co., Inc. v. M.A.I.L.Code, Inc.*, 843 F.Supp. 679, 682 (D.Kan.1994) (citations omitted).

52. *Gwynn v. TransCor America, Inc.*, 26 F.Supp.2d 1256, 1261 (D.Colo.1998) (and "as to each defendant") (citation omitted); *see Rothstein v. Carriere*, 41 F.Supp.2d 381, 386 (E.D.N.Y.1999); *Monarch Normandy Square Partners v. Normandy Square Assocs. Ltd. Partnership*, 817 F.Supp. 899, 903 (D.Kan.1993).

53. *Pratt v. Rowland*, 769 F.Supp. 1128, 1132 (N.D.Cal.1991) (citing in part *Camp v. Gress*, 250 U.S. 308, 316, 39 S.Ct. 478, 63 L.Ed. 997 (1919)).

54. *See Board of County Com'rs of Custer County v. Wilshire Oil Co. of Texas*, 523 F.2d 125, 128–29 (10th Cir.1975) (sales of goods in Oklahoma satisfied the "transacts business" provision of 15 U.S.C. § 22).

55. *Wempe v. Sunrise Medical HHG, Inc.*, 61 F.Supp.2d 1165, 1173 (D.Kan.1999) (quoting *Andrean v. Secretary of U.S. Army*, 840 F.Supp. 1414, 1422–23 (D.Kan.1993) and *Merchants Nat. Bank v. SafraBank*, 776 F.Supp. 538, 541 (D.Kan.1991)).

56. *Id.*

57. *Id.*

58. *Id.*

forum selection clause in Plaintiff's 2001 contract with Chaparral Midlothian.

### III. Motions to Stay Proceedings and Refer to Arbitration

Chaparral Midlothian moves to stay this litigation, and refer claims to arbitration. The three defendants also move to stay the proceedings while (and assuming) Plaintiff's claims against Chaparral Midlothian are stayed and referred to arbitration.

#### A. The Arbitration Clause— Enforceability

 The Court's analysis begins with whether the parties in fact agreed to an arbitration clause, applying state law to determine whether an agreement exists and if so, the terms of the agreement.[59] A district court exercising diversity jurisdiction applies the choice of law rules of the state in which it is sitting.[60] Kansas choice of law rules honor an effective choice of law made by contracting parties.[61] The parties chose Texas as their choice of law in this 1997 agreement. The Court then applies Texas law to determine whether a contract was entered into.[62]

 Plaintiff signed, on February 26, 1997, a contract, called "Conditions of Sale," expressly made effective for invoices dated on or after July 1, 1996. This document was signed by Plaintiff's president, but was not signed by anyone on behalf of Chaparral Midlothian. Plaintiff signed a second agreement, also called "Conditions of Sale," which was expressly effective for transactions after April 3, 2001. The parties agree that there is no arbitration clause in the 2001 contract, such that if any of their disputes is to be arbitrated, it would only be concerning transactions that fall within the scope of the arbitration clause in the 1997 contract.

Plaintiff argues, however, that even disputes arising out of transactions occurring between July 1, 1996 and April 3, 2001, are not subject to arbitration, for two reasons. Plaintiff first argues that the 1997 contract fails for lack of consideration. Chaparral Midlothian contends that the consideration was its partial performance, shipping 150 orders of product to Plaintiff on credit.[63] Plaintiff counters that shipping on credit was not required by the contract and was not consideration.

The 1997 contract contains a number of typical terms, including: where goods were to be shipped F.O.B.; payment terms; interest rate on unpaid balances; seller's disclaimer and limitations of warranties; limitations of seller's liability for nonconforming goods; and a provision concerning buyer's indemnification of seller. Yet, Plaintiff argues that this was a unilateral, not a mutual, bilateral agreement, because paragraph 21 of the 1997 contract placed no obligation or duty on Chaparral Midlothian to ship or sell any product to Plaintiff. Paragraph 21 states:

21. These Conditions of Sale shall apply to any and all future transaction between Seller and Buyer, but these Conditions of Sale shall not obligate Seller to extend credit to Buyer or make any future sales to Buyer.

---

59. *See Black & Veatch Constr., Inc. v. ABB Power Generation, Inc.,* 123 F.Supp.2d 569, 577 (D.Kan.2000) (citation omitted).

60. *Id.* (citation omitted).

61. *Id.* (citation omitted).

62. *Id.*

63. The Court granted Plaintiff's motion to file a sur-reply to Chaparral Midlothian's reply to Plaintiff's response to Chaparral Midlothian's motion to stay, compel arbitration or dismiss. Although Plaintiff accuses Midlothian of "sandbagging," the Court allowed Plaintiff's sur-reply and fully considered its arguments countering the arguments in defendant Midlothian's reply.

This, Plaintiff argues, renders the agreement fatally deficient. Under Texas law, a contract must be based upon a valid consideration, or the contract is unilateral and unenforceable, lacking mutuality.[64] Plaintiff argues that the 1997 document contains only promises from Chaparral Midlothian to abide by the law, to wit: to not charge interest exceeding the maximum amount that may be lawfully contracted for; to not limit Plaintiff's remedies for nonconforming goods in a manner contrary to law. Yet, promises to fulfill pre-existing statutory duties do not constitute consideration.[65]

Furthermore, Plaintiff notes, in the 1997 contract, Chaparral Midlothian expressly disclaims any obligation to perform the essential purpose of the purported agreement, that is, to sell product to Plaintiff. This type of clause, Plaintiff argues, was construed by the Texas Supreme Court in *Sterling Computer Systems of Texas*,[66] as rendering the contract without consideration.

But, Plaintiff's argument is specious, because partial performance (in this case the shipment of 150 orders) constitutes sufficient consideration to support a contract. And it matters not that the contract did not *require* Chaparral Midlothian to sell steel to Plaintiff. The fact is that Chaparral Midlothian did sell steel to Plaintiff, and with that partial performance as consideration, the provisions of the contract are valid and enforceable as to the sales actually made. As the Texas Supreme Court stated in the case of *Hutchings v. Slemons:*[67]

Though a contract be void for lack of mutuality at the time it is made, and while it remains wholly executory, yet, when there has been even a part performance by the party seeking to enforce the same, and in such part performance such party has rendered services or incurred expense contemplated by the parties at the time such contract was made, which confers even a remote benefit on the other party thereto, such benefit will constitute an equitable consideration, and render the entire contract valid and enforceable.

Plaintiff alternatively argues that if the 1997 contract was valid, it was superseded by the 2001 contract, which has no arbitration clause, by virtue of this language:

21. This agreement constitutes the entire understanding of parties with respect to the subject matter hereof, supplants and supersedes any prior agreements or understandings and may only be amended or modified by an agreement in writing executed by both parties.

Plaintiff characterizes paragraph 21 as a "total integration" clause, in effect rendering the prior agreement in 1997 void, annulled, set aside, and replaced. Plaintiff misses an important point. The 1997 and 2001 agreements are not integrated at all. Rather, the 1997 agreement applies to shipments until the effective date of the 2001 agreement.

Here, the 2001 agreement, signed on April 3, 2001, is expressly limited to *future transactions*. A letter from Chaparral

---

64. *Sterling Computer Systems of Texas, Inc. v. Texas Pipe Bending Co.*, 507 S.W.2d 282 (1974) (quoting *Texas Farm Bureau Cotton Ass'n v. Stovall*, 113 Tex. 273, 253 S.W. 1101, 1105 (1923)).

65. *See Martens v. Prairie Producing Co.*, 668 S.W.2d 889, 891 (Tex.App.1984) (citations omitted); *Frame v. Frame*, 120 Tex. 61, 36 S.W.2d 152 (1931).

66. *Sterling Computer Systems of Texas*, 507 S.W.2d at 282.

67. 141 Tex. 448, 452, 174 S.W.2d 487 (Tex. 1943) (citation omitted).

Midlothian, dated April 3, 2001, which included a signature block for Plaintiff to "accept the revised 'Conditions of Sale' dated 03/27/01" stated, "[a]ll future transactions between our companies will be subject to the enclosed 'Conditions of Sale.'" Thus its subject matter is entirely separate and distinct from the 1997 agreement, which is limited to transactions after its effective date, but before the effective date of the 2001 agreement.

Because transactions pre-dating April 3, 2001 are still subject to the terms of the 1997 contract, the arbitration clause applies. Chaparral Midlothian concedes that sales after April 3, 2001 are not arbitrable, but suggests that because only a small percentage of sales ($54,803 in invoices after April 3, compared with $5,986,302 before April 3, 2001) occurred after the effective date of the 2001 agreement, it would be expeditious to arbitrate all claims, if Plaintiff agrees. Plaintiff does not agree to submit the post April, 2001 claims to arbitration; and the Court cannot force Plaintiff to submit these claims to arbitration.

**B. Scope of the Arbitration Clause**

Plaintiff argues that even if the 1997 contract is enforceable and not superseded by the 2001 contract, antitrust and tort claims are not arbitrable, because they don't rely in whole or part on any specific contractual provision, citing the Tenth Circuit's decision in *Coors Brewing Co. v.*

*Molson Breweries.*[68] Chaparral Midlothian cites a Supreme Court case that blesses arbitration of § 1 Sherman Act antitrust claims arising in international transactions,[69] as well as decisions by the First,[70] Eleventh,[71] and Ninth Circuits that bless arbitration of antitrust claims in domestic transactions, splitting with the Second Circuit's opinion in *American Safety.*[72]

Although antitrust claims may generally be arbitrable, whether or not these particular antitrust and tort claims are arbitrable is entirely dependent on the language of the arbitration clause, to wit:

> 17. Any **controversy or claim arising out of or related to these Conditions of Sale or any other transactions between Buyer and Seller** shall be resolved by arbitration ... All arbitration proceeding hereunder shall be conducted in Ellis County, Texas. (emphasis added)

This language renders the scope of this arbitration clause quite broad.[73] It covers not only claims or controversies tied to the parties' contract, but to any other transactions between the parties. And, it covers transactions that are related, even if they don't arise out of the contract. Such broad language covers Plaintiff's antitrust and tort claims, which allege that the Defendants illegally discriminated against Plaintiff by charging it higher prices for steel sold under the contract, than it

---

**68.** 51 F.3d 1511 (10th Cir.1995).

**69.** *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985).

**70.** *Seacoast Motors of Salisbury, Inc. v. DaimlerChrysler Motors,* 271 F.3d 6 (1st Cir.2001).

**71.** *Kotam Electronics, Inc. v. JBL Consumer Products, Inc.,* 93 F.3d 724 (11th Cir.1996).

**72.** *American Safety Equipment Corp. v. J.P.Maguire & Co.,* 391 F.2d 821 (2nd Cir. 1968).

**73.** See *Ketchum v. Almahurst Bloodstock IV,* 685 F.Supp. 786, 791 (D.Kan.1988) ("arising out of or relating to this agreement" is a broad arbitration clause); *Collins & Aikman Products Co. v. Building Systems, Inc.,* 58 F.3d 16, 20 (2nd Cir.1995) (stating that "[a]ny claim or controversy arising out of or relating to th[e] agreement" is the paradigm of a broad clause).

charged competitors, and made false representations to Plaintiff about pricing.

In contrast, in *Coors Brewing*,[74] the clause limited arbitration to "any dispute arising in connection with the implementation, interpretation or enforcement of this Agreement." That language was not broad enough to cover antitrust claims, the Tenth Circuit held, except with respect to antitrust disputes that were within the scope of the parties' licensing agreement, that is claims where there was a "connection between the contract and the antitrust claims."[75]

### C. Stay of Proceedings— Chaparral Midlothian

Given that the transactions occurring before April 3, 2001 are arbitrable, Chaparral Midlothian's motion for a stay of this proceeding pending arbitration of that part of Plaintiff's claim is well taken and shall be granted. Section 3 of the FAA provides that:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the

stay is not in default in proceeding with such arbitration.[76]

But, the post April 2001 transactions are not arbitrable, and thus must be litigated. For that reason, the Court turns to the parties' dispute over the enforceability and scope of the forum selection clause in the 2001 agreement.

### IV. Chaparral Midlothian's Motion to Dismiss for Improper VenueForum Selection Clause

██ Chaparral Midlothian argues that if the Court determines the case should not be stayed to conduct arbitration, then this case should be dismissed because the forum selection clause is mandatory and dictates that this action will be litigated in the state or federal courts in Texas. The Tenth Circuit noted that a motion to dismiss based on a forum selection clause is analyzed as a motion to dismiss for improper venue under Rule 12(b)(3).[77] The remedy for improper venue is either dismissal or transfer. Chaparral Midlothian seeks dismissal and does not request transfer in the alternative.

██ Having determined that the 1997 contract is enforceable and not lacking in consideration, for the same reasons, the Court concludes that the 2001 contract is enforceable and not lacking in consideration. Forum selection clauses are "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances."[78] When construing language

---

74. 51 F.3d at 1516.

75. *Id.* (drawing on the analysis of the First Circuit in *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 723 F.2d 155 (1st Cir.1983), *aff'd* 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985), the Tenth Circuit viewed the arbitration clause as limited to antitrust claims that turned upon specific contractual provisions).

76. 9 U.S.C. § 3.

77. *Riley v. Kingsley Underwriting Agencies, Ltd.*, 969 F.2d 953, 956 (10th Cir.1992) (citations omitted), *cert. denied* 506 U.S. 1021, 113 S.Ct. 658, 121 L.Ed.2d 584 (1992).

78. *M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 10, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972); *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 588, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991); *Milk 'N' More, Inc. v. Beavert*, 963 F.2d 1342, 1346 (10th Cir.1992).

that limits the filing of actions, the parties' stated intent should be given effect.[79] Given that, what is the scope of the forum selection clause in the 2001 contract?

Plaintiff argues that the forum selection clause does not apply, because its scope is limited to breach of contract claims; and does not extend to antitrust and tort claims. The clause, drafted by Chaparral Midlothian, states:

THESE CONDITIONS OF SALE AS WELL AS ANY CONTRACT OR TRANSACTION SUBJECT TO THESE CONDITIONS OF SALE SHALL BE GOVERNED BY THE LAWS OF THE STATE OF TEXAS. IN ANY PROCEEDING TO ENFORCE OR INTERPRET THESE CONDITIONS OF SALE OR ARISING FROM ANY CONTRACT OR TRANSACTION SUBJECT TO THESE CONDITIONS OF SALE, BUYER EXPRESSLY CONSENTS TO THE EXCLUSIVE JURISDICTION OF THE STATE AND FEDERAL COURTS OF THE STATE OF TEXAS AND VENUE SHALL BE PROPER IN ELLIS COUNTY.

Chaparral Midlothian argues that the forum selection clause is broad enough to apply in this action, because the clause covers any proceeding "arising from any contract or transaction subject to these conditions of sale." The Court agrees with Chaparral Midlothian's interpretation.

Chaparral Midlothian requested a stay of these proceedings, an order compelling arbitration, and dismissal of claims not subject to arbitration. Because the forum selection clause applies to the non-arbitrable claims, the Court grants Chaparral Midlothian's motion to dismiss the non-arbitrable claims, that is, claims arising out of transactions covered by the 2001 contract.

## V. Motion by TXI, Chaparral Steel and Chaparral Texas to Stay Proceedings

The three defendants, TXI, Chaparral Steel and Chaparral Texas, move to stay this action, in part on grounds already rejected by this Court: no personal jurisdiction and improper venue. They also argue that if the Court determines that the dispute is subject to the arbitration provision in the contract, then all claims should be stayed pending arbitration, including Plaintiff's claims against these three defendants who are not parties to the contract.

Plaintiff correctly points out that since arbitration is a matter of contract, and since Chaparral Steel Midlothian, L.P. is the only defendant who purportedly contracted with Plaintiff, the other Defendants are not entitled to the benefit of a stay while the claims between Plaintiff and Chaparral Steel Midlothian, L.P. are arbitrated.

In *Coors Brewing*,[80] the Tenth Circuit rejected the argument that plaintiff's actions against co-defendants were also stayed. The Federal Arbitration Act does not require a stay of Plaintiff's nonarbitrable claims against these co-defendants, simply because another defendant's claims are being arbitrated. The three defendants are not parties to the arbitration agreement. Without a valid arbitration agreement between Plaintiff and the three defendants, the Federal Arbitration Act does not even apply, such that the stay provision, 9 U.S.C. § 3, does not apply.[81]

It is true that these three defendants are not treated as separate and distinct entities for purposes of exercising

---

**79.** *SBKC Service Corp. v. 1111 Prospect Partners, L.P.,* 105 F.3d 578, 582 (10th Cir.1997).

**80.** 51 F.3d at 1518.

**81.** *See Citrus Marketing Bd. of Israel v. J. Lauritzen A/S,* 943 F.2d 220, 224–25 (2nd Cir.1991).

personal jurisdiction over them. But attribution of Chaparral Midlothian's contacts to the other three defendants for jurisdictional purposes, is distinguishable from attribution of Chaparral Midlothian's liability to the three defendants. As this Court noted in *Hoffman v. United Telecommunications, Inc.*,[82] with a motion to dismiss for lack of jurisdiction, the court is not yet faced with the issue of holding a parent or affiliate corporation liable for the acts of its subsidiary or affiliate, or vice versa. Once the court reaches that issue, it may impose liability using an alter ego theory and pierce the corporate veil. But this rigorous test is not required to attribute personal jurisdiction to affiliated entities.

Because the Plaintiff seeks to hold these Defendants separately liable, irrespective of the arbitration with Chaparral Midlothian, there is no reason to stay the instant litigation. Even if the Court stayed this litigation, arbitration would not necessarily bind the other three defendants, nor necessarily adjudicate the claims and rights asserted against these three defendants. Denial of a stay may be appropriate even if it results in piecemeal litigation, and despite common operative facts underlying the arbitrable and nonarbitrable claims.[83]

As this Court has expressed before, there is a "decided preference for denying motions to stay the litigation of nonarbitrable federal claims pending arbitration of related arbitrable claims."[84] Because these three defendants have presented no "compelling reasons for staying"[85] the litigation, the Court will deny their motions for stay.

## Conclusion

Because the Court concludes that the 1997 contract between Plaintiff and Chaparral Midlothian is valid and enforceable, and further concludes that Plaintiff's claims based on transactions occurring before the April 3, 2001 effective date of the 2001 contract are arbitrable, the Court stays this litigation between Plaintiff and Chaparral Midlothian on these arbitrable claims.

With respect to claims arising out of transactions occurring after April 3, 2001, the Court concludes that the forum selection clause does apply to Plaintiff's antitrust and tort claims and thus grants Chaparral Midlothian's motion to dismiss these claims for improper venue.

Finally the Court concludes that it has personal jurisdiction over TXI, Chaparral Texas and Chaparral Steel, and because these three defendants were not parties to the 1997 contract, denies their motion for a stay pending arbitration, or dismissal of the claims for improper venue.

**IT IS THEREFORE ORDERED BY THE COURT THAT** the Motion of Defendant Chaparral Steel Midlothian, L.P. to Stay Proceedings and to Refer Case to Arbitration or Alternative to Dismiss for Improper Venue (Doc. 19) is GRANTED.

**IT IS FURTHER ORDERED THAT** the Motion of Defendant Chaparral Steel Texas, Inc. to Dismiss for Lack of Personal Jurisdiction and Improper Venue or in the Alternative to Stay all Proceedings (Doc. 29) is DENIED.

**IT IS FURTHER ORDERED THAT** the Motion of Defendant Chaparral Steel Company to Stay all Proceedings as to Chaparral Steel Company (Doc. 27) is DENIED.

---

82. 575 F.Supp. 1463, 1477–1479 (D.Kan. 1983).

83. *See Coors Brewing,* 51 F.3d at 1517–18.

84. *Ketchum v. Almahurst Bloodstock IV,* 685 F.Supp. 786, 797 (D.Kan.1988) (citations omitted).

85. *Id.*

IT IS FURTHER ORDERED THAT the Motion of Defendant Chaparral Steel Company to Dismiss for Lack of Personal Jurisdiction and Improper Venue (Doc. 7) is DENIED.

IT IS FURTHER ORDERED THAT the Motion of Defendant Texas Industries, Inc. to Stay all Proceedings as to Texas Industries, Inc. (Doc. 25) is DENIED.

IT IS FURTHER ORDERED THAT the Motion of Defendant Texas Industries, Inc. to Dismiss for Lack of Personal Jurisdiction and Improper Venue (Doc. 5) is DENIED.

IT IS SO ORDERED.